## Bonner, Appellant, *v.* Unemployment Compensation Board of Review.

Argued October 24, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*George I. Puhak,* for appellant.

*R. Carlyle Fee,* Assistant Special Deputy Attorney General, with him *Charles R. Davis,* Special Deputy Attorney General and *James H. Duff,* Attorney General, for appellee.

OPINION BY JAMES, J., December 15, 1944:

This appeal from the Unemployment Compensation Board of Review involves the application of §402(d) of the Pennsylvania Unemployment Compensation Act of December 5, 1936, P. L. (1937) 2897, as amended by the Act of April 23, 1942, Sp. Sess. P. L. 60, 43 PS Supp. §802, which provides: "An employee shall be ineligible for compensation or waiting period credit for any week ...... (d) In which the employe's total unemployment is due to a voluntary suspension of work resulting from an industrial dispute, ......" Whether the facts warranted the conclusion that on March 3 to March 16, 1943, *appellant voluntarily* suspended work as a result of a labor dispute is the basic issue. Ten other appeals by fellow employees have been filed, were consolidated by stipulation, and since the same question is involved in all, this decision will dispose of them as well.

Compensation claims for the weeks ending March 9th, 16th, and April 6, 1943, had been filed with the Bureau of Employment and Unemployment by the appellant. Ruling that appellant's unemployment on March 3 was due to a voluntary suspension of work resulting from an industrial dispute, the Bureau dis-

allowed the claim for the period between March 3 and April 2, for the week in which the suspension occurred and for the three following weeks. On appeal, the referee modified the decision of the Bureau to allow claims for the weeks subsequent to March 6. The employer then appealed, and the Board of Review found that the unemployment was due to a voluntary suspension of work as a result of a labor dispute, and disallowed credit for the claim weeks of March 3 to March 16, when the voluntary suspension of work ended. Appellant questions the disallowance of compensation for these thirteen days between March 3 to March 16.

The Board made the following findings of facts, which, being supported by the evidence, will be conclusive on us; §510 of the Unemployment Compensation Act; *Miller v. Unemployment Compensation Board of Review*, 152 Pa. Superior Ct. 315, 31 A. (2d) 740. Appellant and eleven other members of a Provisional Union of District 7, United Mine Workers of America, were employed by Roy H. Risser, Inc., in its Harwood Mine. On the morning of March 3, 1943, the foreman informed the men that the night shift, which had formerly operated for a year and a half, but which had been discontinued during the previous three months, was being reestablished, and four men were being assigned to work who would alternate weekly with the other employees. As on the previous night shift, there was to be no engineer or driver on duty, but the foreman would arrive at the end of the shift to hoist the men from the slope. Of the four men to be on the night shift, two were new, one recalled, and the fourth, Anthony Shebellock, was a "buddy" of the appellant who had been away for five or six weeks on account of a foot injury, having returned on this very day. The men objected, both to the separation of Shebellock from appellant, since they had brought their tools together and disapproved of their use by others, and to working on a shift without an engineer or driver. The employees then decided that

instead of going down that day, they would go to Hazleton to consult the District President of the United Mine Workers of America, who, on the same day, told them to return and work as directed, and if an engineer or driver be missing, he would send a mine inspector to investigate. On the evening of the same day, appellant, as a member of the Grievance Committee of the local accompanied by Shebellock, called on the foreman with the information that the men would report the next morning, but they still desired that an engineer be furnished the night shift. Telling the two to speak to the company officials directly, the foreman refused to convey this statement to his superiors. Neither appellant nor Shebellock contacted any other company officer. On the next day, March 4, all the men, with the exception of the engineer, appeared at the mine, but *due to the absence of the engineer, the men were unable to work.* (Italics ours) No one returned on March 5th, and on March 16th, at a meeting with union officials, the company announced the discontinuation of the operation. It does not appear, either in the findings of the Referee or the Board of Review, that the foreman notified the company officials of the offer of the men to return to work.

We cannot agree with the conclusion of the Bureau of Employment and Unemployment and the Board of Review that appellant's unemployment during the claim weeks to March 16, was due to a voluntary suspension of work resulting from an industrial dispute. We agree with the conclusion of the Referee, to wit: "On the third of March there was a voluntary suspension of work on the part of the employees for one day for the purpose of adjusting an unsatisfactory proposed working condition. On the fourth of March there was a general lay off of employes by the Roy Risser Inc., caused by a shut down of the mine." The voluntary suspension of work occurring on the morning of March 3rd terminated that same day when the foreman was told in good faith that

the men were returning. The failure to operate on the next day cannot be attributed to the employees when the finding of fact blames it on the absence of the engineer. However we may regard the attitude of the employee in refusing to work on March 3rd upon the conditions required by the foreman, it becomes unimportant as soon as he offered to resume work on these terms before his discharge or lay-off. He may still assert his desire of a change in the terms of employment, but as long as the return to work is not coupled with a requirement that the demands be met first, he is not the cause of any further suspension of work. This is especially true when his grievance is the failure of the employer to abide by a statutory regulation enacted for the protection and safety of the employee. Under the Act of June 2, 1891, P. L. 176, Art. XII, rule 20, 52 PS §473, "an engineer who has charge of the hoisting machinery by which persons are lowered or hoisted in a mine shall be in constant attendance for that purpose during the whole time any person or persons are below ground, ......". These men were on hand ready and willing to work, without asking for any change for their shift; the engineer did not appear and operations could not be resumed. From this time they were no longer engaged in a voluntary stoppage of work, and since the employer made no efforts to reopen the mine at any succeeding period, the subsequent suspension of work is not of their doing. Any other construction of the Act would deprive employees, who had decided to abandon a day-old labor dispute and return to their posts, from any unemployment compensation for a period of at least three weeks whenever the employer subsequently refuses to reopen the plant.

Since the appellant participated, on March 3, in a voluntary suspension of work caused by an industrial dispute, he is disqualified from receiving compensation for that entire claim week ending on March 6th. As

for the period between March 6 to March 16, compensation should be allowed.

The order of the Board of Review is reversed and the order of the Referee is sustained.