Jablonsky Unemployment Compensation Case.

Argued November 15, 1950; reargued March 12, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Samuel Krimsly,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General and *Roland M. Morgan,* Associate Counsel, for appellee.

OPINION BY RENO, J., March 21, 1951:

The Board denied appellant's claim because he was "a member of an organization . . . participating in, or directly interested in, the labor dispute which caused the stoppage of work", as provided by the Unemployment Compensation Law, §402(d), 43 P.S. §802.

Appellant admits that he was a member of the United Mine Workers of America when it declared a strike at the mine of the Jeff Coal Company on September 14, 1949. He was an assistant mine foreman, and obeying the requirements of the Acts of June 3, 1943, P. L. 848, §1, 52 P.S. §11, and June 30, 1947, P. L. 1183, §2, 43 P.S. §215.2, he did not authorize or participate in the strike.[1] The mine was closed and appellant was unemployed for the duration of the strike. He had become a member of the Union while he was a miner, and after his promotion continued his membership by regular payment of dues, although as supervisory employe he was not required to maintain his membership. He did not, and probably was not allowed, to attend its meetings; was not permitted to participate in its benefits; and the express terms of the collective bargaining agreement between the Union and the employers excluded him from its operation. He maintained his membership so that he could promote more harmonious labor relations with its members and to protect himself against the day when he might be reduced in rank.[2] He based his claim upon the limited, qualified character of his membership and his motive for continuing his connection with the Union.

---

[1] Act of 1943: "Every mine foreman, assistant mine foreman or fire boss, . . . shall represent the Commonwealth in the coal mine or colliery in which he is employed and be deemed to be an officer of the Commonwealth in enforcing the . . . Mining Laws and performing his duties thereunder. . . ."

Act of 1947: "No public employe shall strike and no person exercising any authority, supervision or direction over any public employe shall have the power to authorize, approve or consent to a strike by one or more public employes."

[2] Appellant does not claim that had he resigned from the Union after his promotion he could not have rejoined it after he again became a rank and file miner.

Nevertheless, he was a member, and the Law unequivocally disqualifies a member from compensation. The legislature drew no distinction between various classes of members: active and honorary, sustaining and contributing, annual and life, voting and social, required and voluntary, real and token; between members who actively participate in organizational deliberations and those who passively accept its determinations; between members who are directly and primarily interested in the realization of union objectives and those who merely preserve their status as members for other and worthy secondary motives. They are *all* members, and the legislature has declared that *members*, without distinction or qualification, shall not receive compensation benefits when the organization participates, or is directly interested, in a labor dispute which causes a strike. In the administration and construction of the Law neither the Board nor this Court can draw a line which the General Assembly has not delineated.

It is true that the Acts quoted, note 1, supra, taken together, forbade appellant as an assistant mine foreman from engaging in a strike, and to that extent he could not perform a duty resting upon members of the Union. But his paramount obligation to the Commonwealth did not cancel his membership in the Union, not any more than a civil service employe who is forbidden to engage in partisan political activities loses his membership in his political party. The legislative mandate went no further than to prohibit his striking and, if he chose to acknowledge another loyalty he could only partially serve,[3] he was free to continue

---

[3] If the United Mine Workers followed conventional union practice, a portion of appellant's dues were used to finance the strike. To that extent he supported a strike in which he could not participate.

his Union membership. The legislature might have exempted him and others in his position from the general operation of §402(d), but for us to write the exception into the Law would be a glaring usurpation of legislative power.

Fundamentally, the case comes to this: Appellant became unemployed because his union ordered a strike and he is bound by its action even though he did not actually consent to it and could not personally participate in it. In *Prentice Unemployment Compensation Case*, 161 Pa. Superior 630, 637, 56 A. 2d 295, Judge DITHRICH tersely stated the controlling principle: ". . . a person cannot claim the advantages of his voluntary acts, in this case joining the union, without at the same time assuming responsibility for their natural and probable consequences." See also *Curcio Unemployment Compensation Case*, 165 Pa. Superior Ct. 385, 68 A. 2d 393.

Decision affirmed.

---

DISSENTING OPINION BY GUNTHER, J.:

I would reverse the decision of the Unemployment Compensation Board. I therefore respectfully dissent from the majority opinion.

The testimony discloses that claimant (1) never attended union meetings; (2) that he was not permitted to attend union meetings; (3) that he had no voice in the conduct of the affairs of the union; and (4) that he did not participate in any benefits of the union. The Board found as a fact that claimant was ". . . not permitted to participate in the benefits of membership". Under the terms of the National Bituminous Coal Wage Agreement in effect in the employ-

er's mines claimant was excluded from the terms of the collective bargaining contract between the union and the employer. The union was not, nor could it be, claimant's collective bargaining agent. An excerpt from the wage agreement provides as follows: "All other employees working in or about the mines shall be included in this Agreement except essential super-visors in fact such as: mine foremen, *assistant* mine foremen who, in the usual performance of their duties, may make examination for gas as prescribed by law and such other supervisors as are in charge of any class of labor inside or outside of the mines and who perform no production work. The Union will not seek to organize or ask recognition for such excepted supervisory employees during the life of this contract". In addition to the fact that claimant does not participate in any of the benefits of union membership, he is also barred from subjecting himself to the rules and regulations of the union and from abiding by all of the decisions of the union by Section 1 of the Act of June 3, 1943, P. L. 848, 52 PS 11, which provides: "Every mine foreman, *assistant mine foreman,* or fire boss, under the provisions of the Bituminous mining laws or the Anthracite Mining Laws, shall represent the Commonwealth in the coal mine or colliery in which he is employed and be deemed to be an officer of the Commonwealth in enforcing the provisions of said Mining Laws and performing his duties thereunder. He shall perform said duties during such times as the mine or colliery in which he is employed is in operation, and at such other times as in the judgment of the operator or the Secretary of Mines shall be necessary or desirable to make the mine or colliery safe for operations or to protect the health and safety of the employes of the operator or the safety of the mine or colliery properties". The union's most impor-

tant activities (collective bargaining and the right to strike) are effectively denied this claimant. He is completely outside the control of the union and he is without power to delegate to the union his right to act for him in enforcing demands upon the employer by means of a strike. The conclusion, therefore, is inescapable that claimant's membership in the union was a matter of no import whatsoever. Membership in any organization implies not only the enjoyment of its benefits, but also a subjection to the rules governing it. Claimant obtained neither the enjoyment of any privileges by his membership, nor could he by virtue of his position subject himself to the rules governing it. To mechanically apply sub-section 2 of section 402 (d) and disqualify this claimant from benefits is to ignore the remedial and humanitarian nature of the unemployment compensation statute. This statute ". . . is a remedial statute, and excepting the sections imposing taxes, its provisions must be liberally and broadly construed so that its objectives may be completely achieved." *McFarland v. U. C. B. R.,* 158 Pa. Superior Ct. 418, 422, 45 A. 2d 423.