## Leto Unemployment Compensation Case.

### P. McGraw Wool Co., Appellant, *v.* Unemployment Compensation Board of Review.

Argued November 18, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ. (WOODSIDE, J., absent).

*Donald W. Ebbert,* with him *Charles C. Hewitt, W. Gordon Rauck* and *Thorp, Reed & Armstrong,* for employer, appellant.

*William L. Hammond,* Special Deputy Attorney General, for Unemployment Compensation Board of Review, appellee.

*M. H. Goldstein,* for claimant, intervenor, appellee.

OPINION BY ROSS, J., July 13, 1954:

In this unemployment compensation case, the compensation authorities awarded benefits to claimants, John Thomas Leto and Mary Liebrum, employes of the P. McGraw Wool Company. The employer took separate appeals which were consolidated for argument before this Court and will be treated in one opinion. Counsel for the respective parties have stipulated that the instant appeal will determine the status of all claims filed by similarly situated employes of the appellant.

The following is a summary of the findings of fact made by the referee and affirmed by the Board: On March 15, 1951, the employer entered into a collective bargaining contract with claimants' unions, Locals No. 34 and No. 774 of the Textile Workers of America, C.I.O. This agreement was for the period March 15, 1951 to March 15, 1952, with provision therein that it would remain in effect for successive one-year terms thereafter until either party thereto gave the other 60 days' notice of an intention to terminate.

On January 10, 1952, the employer gave the unions written notice of its decision to terminate the agreement on March 15, 1952. Thereafter the employer and claimants' union representatives met in an attempt to negotiate a new contract. The employer, because of poor business conditions in the textile industry, proposed that its employes accept a wage reduction amounting to 12½ cents an hour and at the same time agree to increased work loads. The union representatives took the employer's proposal to their membership and it was rejected on February 29, 1952.

One day before the expiration of the contract, the employer and the union representatives met again, this time at the office of a federal mediator. At this meeting the company adhered to its original proposal of

a wage cut, but did moderate its position to the extent that increased work loads need not be instituted until the matter had been worked out with the unions. The union representatives would not agree to a wage reduction. They did, however, offer to continue working on the basis of the existing agreement for a year, a month or even 15 days, to allow additional time for negotiation. The employer refused this offer and informed the unions that work would be available on the first work day following the expiration of the contract at the reduced wage rates proposed by it.

The employes voted not to return to work on the employer's conditions and set up picket lines at the plant on Monday, March 17. The work stoppage continued until April 16, 1952, when negotiations resulted in an extension agreement whereby the employes returned to work at the original wage rates and agreed to a trial period for the modified work assignments proposed by the employer.

The appellant-employer takes the position that its employes are precluded from receiving benefits by section 402(d) of the Unemployment Compensation Law as amended, 43 PS sec. 802(d), which provides in part: "An employe shall be ineligible for compensation for any week—(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed . . ." The Board held that the instant labor dispute was a lock-out and hence not disqualifying under section 402(d).

We have upon a number of occasions dealt with the general problem presented by the instant appeal. In *Hogan Unemployment Compensation Case,* 169 Pa. Superior Ct. 554, 83 A. 2d 386, a collective bargaining

---

agreement between Dravo Corporation, the employer, and claimant's union expired before a new agreement was reached. It was the union which desired modification of the pre-existing terms of employment. During negotiations Dravo made a proposal which was rejected by its employes who demanded "more concessions" which the employer declined to grant. On the next work day following the expiration of the contract, the union posted pickets and work stopped. The compensation authorities found that Dravo would have furnished work to its employes under the same terms and conditions as existed under the expired contract. It was further found that claimant's unemployment was attributable "to his unwillingness and/or failure to report for employment which continued to exist on the basis of the same terms and conditions as those under which he had been working". The Board denied benefits and we affirmed that decision. At page 562 Judge RENO stated: "The negotiations are relevant to show the history of the negotiations and the attitude of the parties, but the ultimate and crucial question is: *What* occurred *after* negotiations ceased, or failed to produce an agreement, and *what* and *who caused* the work stoppage?" And at pages 563-564: "The Board properly concluded that the *final cause* of the work stoppage was the refusal of the union members to work without a contract. The resultant cessation of work constituted a strike and disqualified the employes for benefits."

In *Morris Unemployment Compensation Case,* 169 Pa. Superior Ct. 564, 83 A. 2d 394, a collective bargaining agreement expired before the employer and claimants' union agreed upon the terms of a new agreement. The employer was willing to furnish work upon the terms of the expired contract to provide time for further negotiation but the union, seeking a wage increase,

rejected the employer's offer, posted pickets and its members stopped work.

This Court, speaking through Judge RENO, stated at pages 567-568: "The Board's ultimate finding is: '16. The unemployment of the claimants in question was due to a stoppage of work which existed because of a labor dispute between the company and the union of which these claimants were members.' Its conclusion was: 'In all work stoppage cases, the first question, therefore, must be whether the employes might, had they so desired, have continued working under the existing terms and conditions of employment. If they have the opportunity to do so, but instead choose to suspend work with the view to improving their working conditions, the responsibility for their unemployment rests on them and the stoppage which ensues is not a "lock-out" within the meaning of the Law.'

"The conclusion is sound: 'Responsibility' is used in the sense of 'fault' within the meaning of the policy section of the Law, sec. 3, 43 PS sec. 752, and fault is assessed against the party whose actions constitute the *final cause* of the stoppage. Wolf [the employer] did not withhold work; it did not bar access to its plant; work was available to the union members under the terms of the prior contract. Appellants ceased to work in order to gain a concession from Wolf or by reason of the expiration of the 1948 contract, and they and their fellow members called a strike. That was the final and effective cause of the work stoppage. As stated in the Hogan case, supra, the failure of the parties to agree, or Wolf's refusal to meet the Union's terms, or even Wolf's refusal to bargain collectively, do not impose liability upon the State's Unemployment Compensation Fund."

In *Burleson Unemployment Compensation Case,* 173 Pa. Superior Ct. 527, 98 A. 2d 762, this Court

stated: "The gist of a lock-out is an employer's withholding of work from its employes in order to gain a concession from them. It may be evidenced by closing the plant or by other acts which evince the purpose of forcing employes to accept onerous terms of employment. But where, as here, the plant remains open, the employes are requested to return to work, and full employment is available to all employes at the wages and on the terms of employment prevailing at the time the work stoppage occurred, a labor dispute or a strike is not transformed into a lock-out."

It is, of course, clear that "proof of a lock-out is not made out by evidence that the employer . . . offered terms of employment which his employes allege were less advantageous than those contained in a prior contract"; because "Changes in economic conditions warrant, indeed compel, modifications of existing terms." *Hogan Unemployment Compensation Case,* 169 Pa. Superior Ct. 554, 561, 83 A. 2d 386, supra. In the case at bar, however, the employes of the P. McGraw Wool Company are entitled to benefits *not* because the company offered terms less advantageous than those contained in a prior contract, but rather because the company refused to furnish work on the basis of the pre-existing terms and conditions of employment for a reasonable time to avert a work stoppage pending settlement of the labor dispute.

The *Hogan, Morris* and *Burleson* cases establish the principle that where a claim is made for benefits and it appears that a labor dispute led to a work stoppage, it is the duty of the compensation authorities to ascertain the "final cause" of and "responsibility" or "fault" for such work stoppage. If, as in those cases, some act or omission of the employes or their union precipitated the work stoppage, the labor dispute is classed a strike and benefits are denied under section

402(d). It is significant that in none of the cited cases was it suggested that the compensation authorities should—in seeking the final cause of or responsibility for a work stoppage—inquire into the justification for the employes' demands. On the contrary, in the *Hogan* case this Court stated at page 561: "For the Board to attempt to settle the reasonableness of offers or demands would involve a consideration of economic problems beyond the scope of the authority vested in it and decisions of questions only remotely, if at all, related to the administration of the Unemployment Compensation Law. There is no standard of wages and terms of employment, and the Board does not have a yardstick with which to measure their reasonableness. It cannot write an ex post facto contract for the parties or pass judgment upon the deliberations of negotiators or upon occurrences in the negotiation of a collective bargaining agreement." So here, that depressed business conditions required the P. McGraw Wool Company to seek wage reductions and modified work assignments is not a factor in the search for the final cause of the work stoppage. Labor is only one item of the cost of production. If an employer contends that it must reduce wages, would it not be necessary for the compensation authorities to examine all the other items which go to make up the cost of production to ascertain whether a wage reduction is justified? Such a task is obviously beyond the ability and facilities of the administrative agency.

In the case at bar, claimants' union representatives offered their labor on the basis of the prior contract for a year, a month or fifteen days "to permit additional time for negotiations" (Sixth finding of fact). The refusal of the employer to maintain the status quo for even a short period of time precipitated the work stoppage and was the final cause thereof.

The employer argues that the terms proposed and adhered to by it must be "onerous" if the labor dispute is to be classified as a lock-out rather than a strike. We cannot agree. Whether terms proposed by an employer are or are not onerous would in some, and perhaps in many, cases involve a consideration of the same factors required to ascertain the "reasonableness" of "offers or demands" made by the parties to a labor dispute. The *Hogan* case, as stated above, holds such inquiry beyond the scope of the authority vested in the compensation authorities.

Decisions affirmed.