Schreiber Unemployment Compensation Case.

Argued March 20, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, and WATKINS, JJ. (ERVIN, J., absent).

*Edward Davis* and *Sheldon Tabb,* for appellants.

*Sydney Reuben,* Assistant Attorney General, and *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY WRIGHT, J., September 11, 1958:

The claims for unemployment compensation filed by George Schreiber, and six others in similar position, were denied by the Bureau, the Referee, and the Board of Review upon the ground that claimants' unemployment during a labor dispute was not due to a lockout by the employer, wherefore they were ineligible for benefits under Section 402(d) of the Unemployment Compensation Law. Act of 1936, P. L. [1937] 2897, 402(d), 43 P.S. 802(d). Claimants have appealed.

Appellants were employed as servicemen by the Hygienic Sanitation Company, American and Wingohocking Streets, Philadelphia. They were members of the Warehouse Employes Union, Local 169. The employer and the Union were operating under a collective bar-

gaining agreement which expired on July 12, 1956. Under this agreement the Union was recognized as the bargaining agent for all employes except the office and clerical staff, guards, and "non-working supervisory employees". From January 1956 to April 1956, due to business expansion, the employer opened five new offices in the surrounding metropolitan area and promoted five servicemen to office managers. In May 1956 the Union gave written notice that it desired to bargain over a new contract. Negotiations ensued, and the only disagreement which developed was whether the servicemen who had been promoted to managers must still be members of the Union. Claimants continued working upon the same terms and conditions[1] until August 22, 1956, whereafter pickets were placed at the employer's plant.

The Hygienic Sanitation Company has been in business for thirty-five years. It started with one small office and now has twenty-five managers in four states. The managers purchase materials, hire and fire subordinates, give them instruction, assign their hours, and fix prices for their services. Servicemen are not paid a salary. Managers are paid a minimum salary plus a bonus based on net profits in their respective territories. The Union's position was that the managers were "working supervisory employees", and that the employer should continue checking off their union dues. The employer's position was that it was "left up to them" whether or not to continue union membership, and that the managers "wanted no part" of the Union. On October 9, 1956, after claimants had been given notice and failed to report, it became necessary for the employer to replace them or lose its serv-

---

[1] According to appellants' brief: "The new contract rate was even paid the employes".

ice business. The Union filed a charge of unfair labor practice, and later a charge of discrimination, with the National Labor Relations Board, neither of which charges would the Board prosecute.

Appellants' first contention is that "the actions of the employer in the instant case constituted a' lock-out". It is argued that the employer violated the collective bargaining agreement by promoting employes to the position of manager, and thereafter refusing to check-off their union dues. Appellants' position is that this was a grievance which should have been submitted to arbitration, whereas the employer proposed to submit the matter to the National Labor Relations Board. Our review of this record indicates that the Board was fully justified in arriving at the ultimate conclusion that the responsibility for claimants' unemployment rested upon them and their bargaining unit, and that the conduct of the employer did not constitute a lock-out under Section 402(d) of the Unemployment Compensation Law.

Employees on strike are not eligible to receive unemployment compensation: *Curcio Unemployment Compensation Case,* 165 Pa. Superior Ct. 385, 68 A. 2d 393; *Jablonsky Unemployment Compensation Case,* 168 Pa. Superior Ct. 511, 79 A. 2d 272. It is the duty of the compensation authorities to ascertain the final cause of and responsibility or fault for the unemployment: *Leto Unemployment Compensation Case,* 176 Pa. Superior Ct. 9, 106 A. 2d 652. If some act or omission of the employe or his union precipitated the work stoppage, the labor dispute is classed as a strike and benefits are. denied. On the other hand, if an act of the employer in refusing to maintain the status quo during negotiations precipitated the work stoppage, as occurred under the facts in the *Leto* case, then a lock-out exists and benefits are not to be denied. The unemploy-

ment compensation authorities must determine the direct, immediate, final and effective cause of, the potent and activating reason for, the stoppage: *Hogan Unemployment Compensation Case,* 169 Pa. Superior Ct. 554, 83 A. 2d 386. Findings of the Board of Review, if supported by the evidence, are binding on appeal: *Ristis Unemployment Compensation Case,* 178 Pa. Superior Ct. 400, 116 A. 2d 271. The credibility of witnesses, the weight of their testimony, and the reasonable inferences to be drawn therefrom are for the Board. We must view the evidence in the light most favorable to the party for whom the Board has found, giving that party the benefit of every inference which can be logically and reasonably drawn from it: *McGinnis Unemployment Compensation Case,* 184 Pa. Superior Ct. 95, 132 A. 2d 749.

In the instant case, the Board found: "The record indicates that continuing work was available for the claimant under the same terms and conditions, as had existed prior to the commencement of the work stoppage. Under these circumstances the responsibility for the work stoppage rests upon the claimant and his bargaining unit". In this connection it should be noted that, following the expiration of the contract, no changes were invoked by the employer, and the status quo was maintained. On August 22, 1956, the refusal of the employer to arbitrate the question of union membership on the part of managers was nothing new. It had been the subject of negotiation for several months. Furthermore, it did not materially affect the terms and conditions of appellants' employment. They could have continued working until the dispute was resolved. Appellants cannot successfully maintain, therefore, that the employer's conduct was the final cause of their unemployment.

Appellants' second contention is that "the refusal of the employer to reinstate all the employes on February 18, 1957, constituted a lockout". It is argued that, on said date, they offered to return to work without any conditions, that they had completely capitulated to the wishes of the employer, and should have been reinstated. However, by this time, as conceded in appellants' brief, "replacements had been found". Reliance is placed on *Bonner v. Unemployment Compensation Board of Review*, 156 Pa. Superior Ct. 367, 40 A. 2d 106, but that case is not controlling in the instant situation. We there held that if an employe, before he is discharged or laid off, offers to resume work, without requiring that his demands first be met, is entitled to unemployment compensation. However, the record in the instant case is replete with requests on the part of the employer seeking to have appellants return to work. They were bound to know that their jobs would not be kept open if they stayed away from work indefinitely: *Antinopoulas Unemployment Compensation Case*, 181 Pa. Superior Ct. 515, 124 A. 2d 513. Since the employer was unable to secure appellants' services, other employes were recruited to take their places. When the "capitulation" occurred, there were no job openings. See *Harris Unemployment Compensation Case*, 185 Pa. Superior Ct. 235, 138 A. 2d 207.

Decision affirmed.