DOMINICK G. FEBBI, *ET AL.* (BRL–1017–1–C to BRL–1017–407–C, INCLUSIVE), CLAIMANTS-APPELLANTS, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY AND FORD MOTOR COMPANY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 1, 1960—Decided January 4, 1961.

58

Before Judges GAULKIN, SULLIVAN and FOLEY.

*Mr. Alfred C. Clapp* argued the cause for claimants-appellants (*Mr. Peter C. Cammelieri,* attorney).

*Mr. Edward A. Kaplan* argued the cause for respondent, Board of Review, Division of Employment Security, Department of Labor and Industry (*Mr. Clarence F. McGovern,* attorney).

*Mr. Eugene L. Lora* argued the cause for respondent, Ford Motor Company (*Messrs. Lynch, Lora & Milstein,* attorneys).

The opinion of the court was delivered by

SULLIVAN, J. A. D.   This appeal involves an interpretation of the New Jersey Unemployment Compensation Law, *R. S.* 43:21–1 *et seq.*   Claimants-appellants were employees of the respondent Ford Motor Company at its Mahwah,

New Jersey plant, which plant suspended production on August 22, 1958, to prepare for a new model automobile. During the period of shutdown claimants applied for and received unemployment compensation from the State of New Jersey. Because Ford's payroll week ran from Monday through Sunday, claimants chose the same seven-day period as a benefit week for the payment of unemployment compensation. This resulted in claimants' having a benefit week ending Sunday, September 14, 1958, for which they received unemployment compensation.

On Monday, September 15, retooling operations being completed, production was resumed and claimants were called back to work. They worked Monday and Tuesday, September 15 and 16. On Wednesday, September 17, at about 10 A. M., a strike was called at the plant and work ceased. The strike was settled late Wednesday night or early Thursday morning but claimants were not recalled to work until the following week.

The statute, *N. J. S. A.* 43:21-3, provides for weekly benefits to individuals if eligible, and unemployed as defined in *subsection* (m) of *section* 19 of the act. This subsection provides as follows:

"(m) Unemployment.
(1) An individual shall be deemed 'unemployed' for any week during which he is not engaged in full-time work and with respect to which his remuneration is less than his weekly benefit rate, * * *."

The weekly benefit rate under the statute is usually $35. Accordingly, many of the Ford workers who, on Monday, Tuesday and Wednesday of the week in question, had earned less than their weekly benefit rate applied for partial unemployment benefits for the benefit week Monday, September 14, 1958, through Sunday, September 21, 1958. (It is to be noted that claimants' benefit week was not a calendar week.)

At the hearing on these claims in the Division of Employment Security, Department of Labor and Industry, State of New Jersey there was a dispute as to whether claimants'

unemployment on Thursday, September 18, and Friday, September 19, was due to the strike or to lack of work. Ultimately it was determined by the Board of Review of the Division, upon a remand to it by this court for a resolution of this issue, that the unemployment of claimants on Thursday, September 18, 1958, was due to the labor dispute stoppage of work, but that the unemployment on Friday, September 19, 1958, was due to lack of work. Saturday, September 20, was not a normal workday. This resulted in a situation where, for the calendar week beginning Sunday, September 14, 1958, and ending Saturday, September 20, claimants worked Monday and Tuesday, were unemployed on Wednesday and Thursday due to a stoppage of work which existed because of a labor dispute, and were unemployed on Friday due to lack of work.

The Board of Review held that claimants were disqualified from receiving any unemployment benefits for this week by virtue of *N. J. S. A.* 43:21–5(*d*) which provides that:

"An individual shall be disqualified for benefits:

\*    \*    \*    \*    \*    \*    \*    \*

(d) For any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed."

Ancillary to the foregoing statutory provision is *Regulation* 23.01 adopted by the Division of Employment Security pursuant to authority granted by *N. J. S. A.* 43:21–19(*q*) and which provides as follows:

"(a) A week with respect to any disqualification arising under Section 43:21–5 of the Unemployment Compensation Law shall be a calendar week."

The Board of Review interpreted the statute to mean that any unemployment due to a stoppage of work which exists because of a labor dispute disqualified a worker for unemployment benefits for the entire calendar week in which such unemployment occurred. Therefore, according to the Board's

ruling, since claimants' unemployment on Wednesday and Thursday, September 17 and 18, 1958, was due to a labor dispute stoppage of work, claimants were disqualified for unemployment compensation for the entire calendar week Sunday, September 14, 1958, through Saturday, September 20, 1958.

The Board also ruled that claimants were not entitled to unemployment compensation, which had already been paid to them, for the benefit week September 8 to September 14, 1958, inclusive, for the reason that September 14, which was a day of disqualification under the first ruling, was also the last day of the previous benefit week. The Board held that a worker who is disqualified on one day of a benefit week is ineligible to receive unemployment compensation for the entire benefit week in which the day of disqualification occurs.

Claimants have appealed the Board's rulings. The Ford Motor Company, while agreeing with the rulings, contends that claimants' unemployment on Friday, September 19, 1958, also was due to a stoppage of work which existed because of a labor dispute, and that the Board's finding that claimants' unemployment on that day was due to lack of work was contrary to the weight of the evidence and was erroneous.

On the judicial review of a determination by the Board of Review, its findings of fact will not be disturbed if supported by substantial evidence. The test is whether the Board's determination is reasonable in the light of the proofs submitted. *Berry, Whitson & Berry v. Division of Employment Security*, 21 *N. J.* 73 (1956). Here the Board found that operations could have been resumed on Friday, September 19, 1958, and that claimants' unemployment on that day was due simply to the employer's failure to supply work which could have been supplied. Without going into the details of the testimony, it is sufficient to note that the proofs were in conflict. It was the function of the Board to resolve the issue in the first instance, and since there was

substantial evidence to support the Board's finding, we will not disturb it.

Next, we consider the application of *N. J. S. A.* 43:21–5(*d*) to the present case. Here, of claimants' three days of unemployment during the calendar week in question, two were due to a labor dispute and one due to lack of work. Under the statute the disqualification of an individual is "for any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute." The key phrase is "his unemployment." Does it mean "all his unemployment" during the week in question as claimants contend, or does it mean "his unemployment or any part thereof" during such week, as the Board of Review determined? The statute does not provide a ready answer to the inquiry. It appears that the Legislature in drafting the Unemployment Compensation Law did not specifically provide for a situation where during the same calendar week there would be "strike days" as well as "lack of work days."

Claimants point out that only part of their unemployment for the week in question was due to a stoppage of work which existed because of a labor dispute, and argue that *section* 5(d) is inapplicable to them.

In our search for the legislative intent we note that *clause* (f) of the same statutory section, *N. J. S. A.* 43:21–5(f), disqualifies an individual from receiving benefits,

"For any week with respect to which *or a part of which* he has received or is seeking unemployment benefits under an unemployment compensation law of any other State * * *." (Emphasis supplied)

The absence of the italicized words, *supra,* from *clause* (d) is not without some significance.

The public policy of the State with regard to involuntary unemployment as set forth in the act itself is as follows:

*R. S.* "43:21–2. Declaration of state public policy

As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: economic insecurity due to unemployment is a serious menace to the health,

morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state requires the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed after qualifying periods of employment."

This statement of policy has been interpreted by our courts to mean that the law is to be liberally construed in favor of the allowance of benefits. *Westinghouse Elec. Corp. v. Board of Review,* 25 *N. J.* 221 (1957).

Under the statute an individual's eligibility for benefits or his disqualification therefrom is on a weekly basis. The act does not provide (although perhaps it should) for allowing benefits for eligible days during a week and disallowing benefits for non-eligible days during the same week.

In the present situation, therefore, the choice is between giving claimants unemployment compensation benefits even though a part of their unemployment for the benefit week is due to a labor dispute, or denying them any benefits for such week even though part of their unemployment is due to a lack of work. It follows as a corollary to the policy of liberal construction in favor of the allowance of benefits as set forth in *Westinghouse, supra,* that a provision disqualifying a person from benefits is to be strictly construed.

On the foregoing basis we hold that the proper interpretation of *section* 5(d) is that an individual shall be disqualified for benefits for any week with respect to which it is found that all his unemployment is due to a stoppage of work which exists because of a labor dispute.

The Board of Review, in denying benefits to claimants, cited *Great A. & P. Tea Co. v. New Jersey Department of Labor and Industry, etc., Board of Review,* 29 *N. J. Super.* 26 (*App. Div.* 1953), to support its ruling. In that case, however, the specific issue with which we are here concerned was not raised or considered, and the decision cannot be considered a precedent on the present inquiry.

It is also argued that the 1945 amendment to *section* 5(d) supports the Board's ruling. As originally enacted in 1936 the section provided that an individual shall be disqualified for benefits "(d) For any week with respect to which it is found that his *total* unemployment is due to a stoppage of work which exists because of a labor dispute * * *." (Emphasis supplied) The 1945 amendment eliminated the word "total" from the section, and this is urged as an argument against claimants' interpretation that the section as it now stands means "all his unemployment" during the week.

This contention misconceives the 1945 amendment. Prior to 1945 an individual had to be totally unemployed during a week in order to receive benefits under the statute, *i. e.,* "total unemployment" was required for eligibility. In 1945 the statute was broadened so as to allow benefits for partial unemployment during a week, and as a result the word "total" was eliminated from *section* 5(d). It was not intended by deletion of this word to provide that a claimant was disqualified if any part of his unemployment during the week was due to a labor dispute.

A further argument on the construction of *section* 5(d) is that if a worker *becomes* unemployed due to a stoppage of work which exists because of a labor dispute, he is disqualified for the entire calendar week in which such stoppage of work occurred, even though there may be some later days of unemployment in that week due to a lack of work.

There is no merit to this proposed construction. Nowhere in the section involved or in the act itself is there any indication that the compensability of unemployment de-

pends solely on how such unemployment began. It is clear from the context in which it is used that the term "stoppage of work" means the state of being stopped rather than the act of stopping.

Finally it is argued that claimants are ineligible for benefits for the week in question by virtue of *section* 4(c) of the act which provides that an individual shall be eligible to receive benefits with respect to any week only if it appears among other things that he is available for work. This section, however, does not apply to claimants. Persons whose unemployment is due to a stoppage of work which exists because of a labor dispute are available for work. It is the labor dispute that causes their unemployment. If such persons were not eligible for benefits under *section* 4(c) of the act, it would be unnecessary to have the disqualification provided for in *section* 5(d).

Cases in other jurisdictions are not helpful on the question here involved, in view of specific statutory provisions indicating that where any part of the claimants' unemployment during a week is due to a labor dispute, he shall be ineligible for benefits for such week. *Bonner v. Unemployment Compensation Board of Review, 156 Pa. Super. 367, 40 A. 2d 106 (Super. Ct. 1944)* ; *American Steel & Wire Co. of New Jersey v. Unemployment Compensation Bd. of Review, 161 Pa. Super. 622, 56 A. 2d 288 (Super. Ct. 1948)* ; *Chrysler Corporation v. Review Board, 120 Ind. App. 425, 92 N. E. 2d 565 (App. Ct. 1950)*.

Turning now to the benefit week ending September 14, 1958, it follows that the Board's ruling that claimants were not entitled to unemployment compensation for this week must be set aside. The Board's determination on this issue stemmed from its other finding that claimants were disqualified for benefits for the calendar week beginning September 14. Because the earlier benefit week overlapped this calendar week by one day, the Board held that the earlier benefit week also must fall. Since it has been determined that claimants were not disqualified for the calendar week

beginning September 14, the basis for the Board's ruling as to the overlapping benefit week no longer exists.

Reversed.

GAULKIN, J. A. D. (concurring). The majority says "the choice is between giving claimants unemployment benefits even though a part of their unemployment for the benefit week is due to a labor dispute, or denying them any benefits for such week even though part of their unemployment is due to a lack of work."

It appears to me that a third construction is possible. That is that, if the employee would have earned more than "his weekly benefit rate" if he had worked on those days of the week during which there was "a stoppage &ast; &ast; &ast; because of a labor dispute," he is not entitled to benefits. On the other hand if, even had he worked, he would not have earned that much, he is entitled to benefits, in spite of the fact that part of his week's unemployment was due to such a stoppage.

*N. J. S. A.* 43:21–19(m) provides that "an individual shall be deemed unemployed for any week during which" two things co-exist: "he is not engaged in full time work," *and* "his remuneration is less than his weekly benefit rate." *N. J. S. A.* 43:21–5(d) provides that he shall be disqualified if "it is found that his unemployment *is due to* a stoppage of work which exists because of a labor dispute &ast; &ast; &ast;." (Emphasis ours) That would appear to mean that the employee is ineligible when, but only when, both of the two necessary elements of unemployment are caused by a labor dispute—his failure to work a full time week *and* his failure to earn his weekly benefit rate. If he would not have earned his weekly benefit rate even if there had been no labor dispute stoppage, his unemployment is not "due to" a labor dispute and he is eligible for benefits in spite of such stoppage. An example of such a week would be one in which a man, whose benefit rate is $35, normally earning $16 per day and working a five-day week, has two strike days and three lay-off days.

On the other hand if, had there been no labor dispute, he would have earned his benefit rate, his failure to earn it would be due to a labor dispute, and he would be ineligible.

However, this suggested construction was rejected by counsel, and found no favor with my respected brethren. Such unanimity convinces me that this construction is, if not completely erroneous, at least so doubtful that I should concur in the opinion of the majority, in obedience to the mandate of the statute to adopt the construction most favorable to the employee. I am especially moved to this conclusion by the broad meaning given to "labor dispute" by the cases.

For the foregoing reasons, I concur with the result reached by the majority.