Aluminum Company of America *v.* Unemployment Compensation Board of Review and Thompson, Sr., et al., Intervenors.

Argued April 4, 1973, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Donald C. Winson,* with him *Eckert, Seamans, Cherin & Mellott,* for appellant.

*Sydney Reuben,* Assistant Attorney General, for appellee.

*Richard B. Sigmond,* with him *Bernard N. Katz* and *Meranze, Katz, Spear & Bielitsky,* for intervenors.

OPINION BY JUDGE CRUMLISH, JR., June 5, 1973:

Before us is an appeal from a decision and order of the Unemployment Compensation Board of Review dated January 5, 1972 affirming a Referee's decision which granted unemployment benefits to the claimants.

In a letter to the Aluminum Company of America (Alcoa) dated March 31, 1970, Local 445 of the Aluminum Workers International Union, Lebanon Plant (Union), requested five days of discussion between the Union and Alcoa regarding a workload grievance which had arisen on October 11, 1968. This procedure was provided in the collective bargaining agreement between Alcoa and the Union which permits the Union to strike over non-arbitrable grievances following the unsuccessful conclusion of mandatory five days of discussion of the present disputed issue. This comes after the fourth step of the grievance procedure. The five-day

period of discussion on a non-arbitrable grievance or a strike as a result thereof may be called at any time.

These five days of discussions between Alcoa and the Union started May 4 and ended May 8. On June 3, 1970, the Union called a work stoppage at the Lebanon Plant. The failure to resolve the workload grievance raised by its "5-day" letter of March 31 was given as the reason for the stoppage.

After one week, the Union notified Alcoa by telegram dated June 10, 1970, that it was accepting the Company's position on the workload grievance and that it was terminating the work stoppage. Alcoa refused to reopen the plant until the Union and Company resolved what Alcoa contended was the real reason for the June 3rd strike, namely the issue of staggered work schedules.

On August 20 and 21, 1970, Alcoa and the Union met and discussed staggered work schedules. These discussions resulted in an executed Memorandum of Understanding between Alcoa and the Union, dated August 21, 1970, which resolved the staggered work schedule issue.[1] This Memorandum was ratified by the employees on August 23 and the employees returned to work on August 25, 1970.

Claimants petitioned for and were granted unemployment benefits by the Unemployment Compensation Board of Review for the period beginning June 10, 1970. Alcoa appeals to this Court.

Section 402(d) of the Act of December 5, 1936, P. L. 2897, 43 P.S. §802(d) provides that a claimant shall be ineligible for unemployment compensation benefits during any week: "(d) In which his unemployment is due to a stoppage of work, which exists because of a

---

[1] The Memorandum provides that the Union membership "will work the necessary staggered schedules without taking action to inhibit the use and effectiveness of such scheduling. . . ."

labor dispute (other than a lockout) at the factory, establishment or other premises at which he is or was last employed. . . ."

The sole issue for our consideration here is whether the work stoppage at the Lebanon Alcoa plant from June 11 to August 24, 1970 was the result of a strike or a lockout. If a lockout rather than a strike precipitated the work stoppage, the claimants [appellees] are entitled to benefits pursuant to Section 402(d) of the Unemployment Compensation Law.

In an unemployment compensation case, this Court's scope of review is normally limited to a determination of whether the findings of the Unemployment Compensation Board of Review are supported by substantial competent evidence. If so substantiated, these findings are conclusive and binding upon a reviewing court. *Loder v. Unemployment Compensation Board of Review,* 6 Pa. Commonwealth Ct. 484, 296 A. 2d 297 (1972) ; *Cleaver v. Unemployment Compensation Board of Review,* 5 Pa. Commonwealth Ct. 255, 190 A. 2d 279 (1972) ; *Holland v. Unemployment Compensation Board of Review,* 4 Pa. Commonwealth Ct. 292, 286 A. 2d 19 (1972).

However, since the issue in this case is whether there was a strike or lockout at the Lebanon Alcoa plant in the days in question, a matter consisting of mixed law and fact, *Philco Corporation v. Unemployment Compensation Board of Review,* 430 Pa. 101, 242 A. 2d 454 (1968) ; *Toma v. Unemployment Compensation Board of Review,* 4 Pa. Commonwealth Ct. 38, 285 A. 2d 201 (1971), the Board's decision on this essential matter is subject to review by this Court.

Appellant strenuously argues that the Union was engaged in a concerted plan of intermittent strikes over feigned issues in order to force appellant to accede to the Union's demands on the only real labor problem,

namely the institution of the staggered work schedule.[2] Appellant took full advantage of the wide latitude permitted by the referee in the presentation of evidence in pursuit of this contention by introducing testimony and exhibits in an attempt to show that there was a Union plot to call short, intermitten strikes over feigned issues. Appellant argues that its refusal to open its doors under these circumstances was not a lockout.

Section 402(d) of the Law, 43 P.S. §802(d) persuades us that it was the clear intent of the Legislature that the Unemployment Compensation Fund should not be used to encourage employees to voluntarily cease work and become unemployed. Only when a lockout (involuntary unemployment) is the cause of the unemployment is there compensation.

In determining whether a work stoppage is a lockout or a strike, we look to the decisional law. "Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of contract negotiations, and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations?" *Philco Corp.*, 430 Pa. at 104, 242 A. 2d at 455; *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 444, 163 A. 2d 91, 93 (1960); *Toma*, 4 Pa. Commonwealth Ct. at 42, 285 A. 2d at 204.

Appellant cites cases which it contends hold that a labor dispute or strike exists when employees engage in slowdown practices and in a concerted plan to systematically report off work for alleged sickness. Refer-

---

[2] A staggered work schedule is one in which the plant is operated with staggered shifts throughout a seven-day week with two days off for the various employees falling on different days of the week, as opposed to operating the plant on the basis of a five-day week with all employees being off Saturday and Sunday.

ring to evidence tending to show a concerted plan of short intermittent strikes, appellant argues that its refusal to open its doors after the Union agreed to return did not constitute a lockout. What appellant is urging is that the Union, while mouthing a request for return to work, was really engaged in a plan of management harassment, in effect caused its own unemployment and is not entitled to unemployment compensation benefits.

At all times in question there was in force a collective bargaining agreement between appellant and the Union. The strike initiated by the Union which began June 3rd and lasted until June 10th was a strike following an unresolved non-arbitrable grievance, which was explicitly condoned by the collective bargaining agreement. On June 10th, the Union accepted appellant's position on the *stated* reason for the strike, namely the workload grievance and it indicated its willingness to return to work under the then existing terms and conditions of employment. It was at this point the appellant, considering itself to be the target of strikes over feigned issues refused to permit its employees to return until the dispute, the issue of staggered shifts, was resolved.

We find that appellant withheld work from his employees so that it might obtain contract concessions and therefore this work stoppage was a lockout. *Vrotney Unemployment Compensation Case, supra; Weimer v. Unemployment Compensation Board of Review,* 176 Pa. Superior Ct. 348, 107 A. 2d 607 (1954).

Unlike the cases cited by appellant where work slowdowns and concerted plans of feigned illness were significant contributions to the stoppage, the Union here meticulously adhered to the rights specifically authorized by the collective bargaining agreements. It struck appellant only after the prescribed grievance procedure had been pursued and five days of discussion

ended without resolution. There is no doubt that the workload grievance was the assigned reason for the strike. Finally, and most importantly, the Union informed appellant that it wanted to return to work under the pre-existing terms and conditions of employment (including the staggered shift schedule).

Analogous are those cases which hold that where an employer changes or modifies the terms and conditions of employment under an existing contract, employees who stop work rather than resort to available legal remedies are not entitled to compensation. *See Arbechesky Unemployment Compensation Case*, 174 Pa. Superior Ct. 217, 100 A. 2d 396 (1953) ; *Miller v. Unemployment Compensation Board of Review*, 152 Pa. Superior Ct. 315, 31 A. 2d 740 (1942). Assuming arguendo that the Union here was in the midst of a concerted effort to gain concessions, appellant's remedy for unemployment compensation purposes lay in negotiation, not in closing the plant. The answer to the query "who is responsible for the work stoppage?" determines the result. In search of the solution, we ask: Did the employees offer to return to work under the pre-existing terms and conditions of employment? It is not our duty to determine whether the terms imposed by the employer as prerequisites to the resumption of work are reasonable. *Leto Unemployment Compensation Case*, 176 Pa. Superior Ct. 9, 106 A. 2d 652 (1954).

Since the claimants here did make the offer to return to work under existing conditions, the responsibility for the work stoppage of June 10th and August 24th lies with appellant. Accordingly, appellees are entitled to unemployment compensation benefits and we issue the following

### Order

Now, this 5th day of June, 1973, the Order of the Unemployment Compensation Board of Review dated July 5, 1972 is hereby affirmed.

Judge ROGERS concurs in the result only.