IN RE GEORGE J. STEELMAN ET AL., CLAIMANTS, EMPLOYEES, AND NEBEL KNITTING COMPANY, INC., EMPLOYER.

(Filed 19 March, 1941.)

**1. Master and Servant § 60—Right to unemployment benefits during stoppage of work as result of labor dispute.**

Under the provisions of the Unemployment Compensation Act, sec. 5 (d), ch. 1, Public Laws of 1936, employees who participate in, finance or who are directly interested in a labor dispute which results in stoppage of work, or who are members of a grade or class of workers which has members employed at the premises at which the stoppage occurs, any of whom, immediately before the stoppage occurs, participate in, finance or are directly interested in such labor dispute, are not entitled to unemployment compensation benefits during the stoppage of work, and each employee-claimant is required to show to the satisfaction of the Commission that he is not disqualified under the terms of this section.

**2. Same—**

The provisions of the Unemployment Compensation Act seeking to maintain neutrality on the part of the State in labor disputes will be given effect by the courts, since the matter of policy is in the exclusive province of the Legislature and the courts will not interfere therewith unless the provisions relating thereto have no reasonable relation to the end sought to be accomplished.

**3. Same—**

Sec. 5 (d), ch. 1, Public Laws of 1936, which makes specific provision in regard to disqualification of employee-claimants during stoppage of work because of labor disputes, prevails over the provision of sec. 2 of the Act, stating the general policy of the Act to provide for benefits to workers who are "unemployed through no fault of their own."

**4. Statutes § 5a—**

It is a recognized principle of statutory construction that when words of general import, the subject of a statute, are followed by words of particular or restricted import relating to the same subject matter, the latter will operate to limit or restrict the former.

**5. Same—**

The end of all statutory construction is to discover and to effectuate the legislative intent.

**6. Master and Servant § 60—When evidence supports finding that claimants were disqualified during stoppage of work, finding is conclusive.**

When the Unemployment Compensation Commission finds, upon supporting evidence, that employee-claimants were not entitled to benefits during the stoppage of work caused by a labor dispute because claimants either participated in, financed, or were directly interested in the labor dispute which caused the stoppage of work, or belonged to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurred, some of whom were participating in, or financing, or directly

interested in the dispute, the ruling of the Commission denying compensation during the stoppage of the work will be upheld.

**7. Master and Servant § 62—**

Upon appeal to the Superior Court from any final decision of the Unemployment Compensation Commission, the findings of the Commission as to the facts, if supported by evidence, and in the absence of fraud, are conclusive, the jurisdiction of the Superior Court on appeal being limited to questions of law. Sec. 6 (i), ch. 1, Public Laws of 1936.

**8. Master and Servant § 60—Employer held not prejudiced by order that eligibility of claimants after resumption of operations should be determined.**

The evidence tended to show that employee-claimants not only did not work during the period of stoppage of work at the employer's plant caused by a labor dispute, but also that they did not resume work after operations at the plant were resumed, and after notification by the employer that jobs were available. There was also evidence on behalf of claimants that they did not return to their jobs because of the labor dispute. The Commission ruled that claimants were not entitled to benefits during the stoppage of work. *Held:* The employer is not prejudiced by the further order of the Commission that the eligibility of claimants to benefits subsequent to the resumption of operations at the plant should be determined, since it must be presumed the Commission will determine eligibility of each claimant for such benefits in accordance with objective standards or criteria set up in the Act, but the existence and effect of a labor dispute may have an essential bearing upon the eligibility of claimants, the suitableness of work offered, and the disqualifications for benefits. Sec. 5 (c) (2), ch. 1, Public Laws of 1936.

**9. Master and Servant § 61—**

The Unemployment Compensation Commission is charged with administering the benefits provided in the Unemployment Compensation Act in accordance with the objective standards and criteria set up in the Act, but the merits of labor disputes do not belong to the Commission, these being matters properly pertaining to the field of labor relations.

APPEALS by Nebel Knitting Company, Inc., employer, and a number of employee-claimants from *Johnston, Special Judge,* at Extra September Term, 1940, of MECKLENBURG.

Proceeding under Unemployment Compensation Law to determine validity of claims and disqualifications for unemployment benefits.

The facts, essential to an understanding of the questions presented by the appeals, follow:

I. The Nebel Knitting Company is engaged in the manufacture of ladies' full-fashioned silk hosiery in the city of Charlotte, and normally employs about 400 workers.

II. For a period of five weeks, from 10 April to 13 May, 1940, there was a stoppage of work at the plant or factory of the Nebel Knitting Company because of a labor dispute—a strike having been called by the

union to which some of the employees belonged, picket lines established, etc.

III. On 29 April, the company addressed a letter to all of its employees, including the claimants, notifying them that operations would be resumed on 13 May, 1940, and that "all present employees" who reported for work on that day would be put back on their "former jobs" without reference to whether they belonged to a union or had participated in the current strike. This letter contained the further notice that "from and after May 13, 1940, if the company is operating, it will, on a permanent basis, fill vacant jobs, which it desires to run, with whoever applies or whomever it can employ to fill such jobs satisfactorily."

IV. On 13 May, the company resumed operations to such an extent that there was no longer a stoppage of work within the meaning of the Act. The labor dispute still continued, however, and the picket line was maintained for some time thereafter. The president of the Nebel Knitting Company testified that all the employees on strike would be taken back to work if they would "make application or signify their intention of coming back or come in." There was evidence on behalf of the claimants that they did not return to their jobs because of the labor dispute.

V. A large number of these workers filed claims for unemployment benefits. A group hearing was had pursuant to the rules established by the Unemployment Compensation Commission, and the following conclusions finally reached:

1. The employee-claimants, 108 in number, referred to as James C. Jones and others, and represented by Jones & Smathers, attorneys, and the employee-claimants, 7 in number, referred to as Sarah R. Bean and others, and represented by John Newitt, attorney, were denied benefits for the period from 10 April to 13 May, 1940, because it was found as a fact that they were either (a) "participating in or financing or directly interested in the labor dispute which caused the stoppage of work at the plant or premises of Nebel Knitting Co., Inc.," or that they did (b) "belong to a grade or class of workers which, immediately before the commencement of the stoppage, there were members employed at the premises, at which the stoppage occurred, which said members were participating in or financing or directly interested in the dispute."

From this ruling, the employee-claimants excepted and appealed to the Superior Court of Mecklenburg County.

2. It further appearing to the Commission that operations were resumed on 13 May, 1940, to such an extent that there was no longer a stoppage of work at the plant or factory of the Nebel Knitting Company, it was adjudged that the above claimants would be entitled to benefits

from and after this date, the date on which the stoppage of work at the plant or factory of the employer ceased, if they were found to be otherwise eligible for benefits under the Unemployment Compensation Law, and it was ordered that the eligibility of the claimants should be determined from and after 13 May, 1940.

From this ruling the Nebel Knitting Company entered exceptions and appeal to the Superior Court.

In the Superior Court, the findings and conclusions of the Commission were sustained and confirmed.

From this judgment, the Nebel Knitting Company and the claimants as above designated, noted exceptions and appeal.

*Guthrie, Pierce & Blakeney* for *Nebel Knitting Co., employer, appellant.*

*J. Laurence Jones* for *James C. Jones et al., employee-claimants, appellants.*

*John Newitt* for *Sarah R. Bean et al., employee-claimants, appellants.*

*Adrian J. Newton, Ralph Moody,* and *J. C. B. Ehringhaus, Jr.,* for *Unemployment Compensation Commission.*

STACY, C. J. The impression is gained from a careful perusal of the record that the Unemployment Compensation Law has been properly interpreted and applied to the facts of the instant case. While the record presents only a question of statutory construction, it may be useful to consult the opinion of the Supreme Court of the United States in *Carmichael v. Southern Coal Co.,* 301 U. S., 495, where the validity of the Alabama Act was considered and upheld. See, also, *Stewart Machine Co. v. Davis,* 301 U. S., 548; "Unemployment Compensation in Labor Disputes," 49 Yale Law Journal, 461; "Unemployment Insurance," Columbia Law Review, 858.

APPEALS OF EMPLOYEE-CLAIMANTS.

The questions presented by the appeals of the employee-claimants relate to the disqualifications for benefits proscribed in section 5 (d) of the Unemployment Compensation Law. Ch. 1, Public Laws 1936. The pertinent provisions follow:

"Sec. 5. An individual shall be disqualified for benefits: . . . (d) For any week with respect to which the commission finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed, provided that this subsection shall not apply if it is shown to the satisfaction of the commission that—

"(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and

"(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute."

The statute withholds benefits during the stoppage of work which is caused by a labor dispute, from all persons participating in or financing or directly interested in the labor dispute and from all grades or classes of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, and any of whom are participating in or financing or directly interested in the dispute. Each claimant is required to show to the satisfaction of the Commission that he is not disqualified for benefits under the terms of this section. It thus appears that the State seeks to be neutral in the labor dispute as far as practicable, and to grant benefits only in conformity to such neutrality. Of course, it is recognized that in a matter of this kind, some allowance must be made in fixing the line or point of difference between granting and withholding benefits during the stoppage of work caused by a labor dispute. *Supply Co. v. Maxwell,* 212 N. C., 624, 194 S. E., 117. "But when it is seen that a line or point there must be, and there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark" —*Mr. Justice Holmes* in *Louisville Gas Co. v. Coleman,* 277 U. S., 32. The wisdom or impolicy of such decision belongs to the legislative, and not to the judicial, department of the Government. *United States v. F. W. Darby Lumber Co.,* ...... U. S., ....., decided 3 February, 1941— (Fair Labor Standards Case).

The appealing employee-claimants take the position that the interpretation of this section is perforce controlled by the declaration of policy contained in sec. 2 of the Act, the general designation of workers there selected for benefits being those who are "unemployed through no fault of their own." The Commission and the court below thought otherwise. They followed the usual and accepted rule of construction that "where a statute expresses first a general intent, and afterwards an inconsistent particular intent, the latter will be taken as an exception from the former and both will stand." 1 Lewis' Sutherland on Stat. Constr. (2 Ed.), sec. 268; *Rogers v. U. S.,* 185 U. S., 83.

It is an established canon of construction that where there are two provisions in a statute, one of which is special or particular, and certainly includes the matter in hand, and the other general, which, if standing alone, would include the same matter and thus conflict with the

particular provision, the special will be taken as intended to constitute an exception to the general provision, as the General Assembly is not to be presumed to have intended a conflict.   *Nance v. R. R.,* 149 N. C., 366, 63 S. E., 116; *Crane v. Reeder,* 22 Mich., 322; *Dahnke v. People,* 168 Ill., 102, 48 N. E., 137, 39 L. R. A., 197.

Indeed, it may be doubted whether any serious conflict exists in the present law between the general intent expressed in the declaration of policy and the particular intent found in sec. 5 (d) of the Act.   *School Comrs. v. Aldermen,* 158 N. C., 191, 73 S. E., 905.   It is a recognized principle of statutory construction, that when words of general import, the subject of a statute, are followed by words of particular or restricted import relating to the same subject matter, the latter will operate to limit or to restrict the former.   *Nance v. R. R., supra; Supply Co. v. Eastern Star Home,* 163 N. C., 513, 79 S. E., 964.   The end of all construction is to discover and to effectuate the legislative intent.   *Abernethy v. Comrs.,* 169 N. C., 631, 86 S. E., 577.

Accordant with the terms of this section, the Commission found that the employee-claimants, appellants herein, were not entitled to benefits during the stoppage of work at the factory, establishment, or other premises of the Nebel Knitting Company because it appeared from the evidence that they were either (a) participating in or financing or directly interested in the labor dispute which caused the stoppage of work, or (b) that they belonged to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurred, some of whom were participating in or financing or directly interested in the dispute. The ruling of the Commission was upheld on appeal to the Superior Court.   It is supported by the language of the statute and the evidence in the case.

It is provided in sec. 6 (i) that on appeal to the Superior Court from any final decision of the Commission, the findings of the Commission as to the facts, if supported by evidence, and in the absence of fraud, shall be conclusive and the jurisdiction of the court is confined to questions of law.   It is further provided that an appeal may be taken from this decision, as in civil cases, without bond and without stay of the judgment unless otherwise ordered.

### Appeal of Nebel Knitting Company, Inc.

The employer appeals from the ruling of the Commission in respect of the eligibility of the employee-claimants herein who did not return to their work on 13 May, 1940, the date on which the stoppage of work at its plant is found to have ceased.   The effect of this ruling, as we understand it, is to declare the stoppage of work which theretofore pre-

vailed at the plant of the Nebel Knitting Company because of a labor dispute, no longer existed, or had come to an end, and that the disqualifications effective only during such stoppage would be eliminated in thereafter determining the eligibility of claimants. It is not perceived wherein the employer can presently complain at this ruling. So far as appears, the individual determinations have not yet been made, and we cannot assume the Commission will omit to observe the provisions of the statute in making them. The group hearing was for the purpose of determining the disqualifications of claimants during the stoppage of work caused by the labor dispute. Eligibility thereafter will arise from week to week as each claimant continues to apply for benefits.

Perhaps it is fair to say, however, that the effect of the present determination is to declare the employer's letter of 29 April and his testimony that the claimants' positions were still open, if they cared to apply for them, would not perforce disqualify the claimants or render them ineligible for benefits from and after 13 May, 1940, the date on which the stoppage of work ceased. The position finds support in sec. 5 (c) (2) of the Act, which provides: "Notwithstanding any other provisions of this Act, no work shall be deemed suitable and benefits shall not be denied under this Act to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (a) If the position offered is vacant due directly to a strike, lockout, or other labor dispute." There was evidence on behalf of the claimants that they did not return to their jobs because of the labor dispute.

The existence and effect of a labor dispute may have an essential bearing upon the eligibility of claimants, the suitableness of work offered, and the disqualifications for benefits, all of which are to be determined by the Unemployment Compensation Commission according to certain objective standards or criteria, but the merits of the labor dispute do not belong to the Commission. These are matters more properly pertaining to the field of labor relations.

The whole case, then, comes to this:

First. The employee-claimants, appellants herein, were denied compensation during the stoppage of work at the factory, establishment, or other premises of the Nebel Knitting Company because it appeared from the evidence, and the Commission so found, that they were either (a) participating in or financing or directly interested in the labor dispute which caused the stoppage of work, or (b) that they belonged to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurred, some of whom were participating in or financing or directly interested in the dispute.

Second. The employee-claimants herein who did not return to their work on 13 May, 1940, are declared to be entitled to benefits from and after this date, the date on which the stoppage of work at the plant or factory of the employer ceased, if they are found to be eligible for benefits under the Unemployment Compensation Law, and it was accordingly ordered that their eligibility for benefits should be determined from and after this date.

Both rulings are apparently accordant with the provisions of the Unemployment Compensation Law.

On the record as presented, the judgment of the Superior Court will be upheld.

Affirmed.