Urda Unemployment Compensation Case.

Buckeye Coal Company, Appellant, *v.* Unemployment Compensation Board of Review.

Argued November 17, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*Walter C. Montgomery,* with him *Montgomery & Thompson,* for appellant.

*Roland M. Morgan,* with him *T. McKeen Chidsey,* Attorney General, *R. Carlyle Fee,* Assistant Special Deputy Attorney General and *Charles R. Davis,* Special Deputy Attorney General, for appellee.

OPINION BY ARNOLD, J., January 8, 1948:

The claimant in this unemployment compensation case was a member of Local Union 6290 of the United Mine Workers of America, embracing the employes of Nemacolin mine of the Buckeye Coal Company in Greene County. The referee, affirmed by the Unemployment Compensation Board of Review, awarded compensation, and the Buckeye Coal Company, intervenor, appealed.

The National Bituminous Coal Operators had a labor contract with the United Mine Workers of America providing for the wages, hours, conditions, etc. of mining employes, which expired on March 31, 1946, upon five days' notice. The parties sought to negotiate a new agreement before this expiration date, but upon these efforts proving fruitless, the United Mine Workers of America gave the five days' termination notice and advised all local unions that no contract would exist after March 31. The members of the United Mine Workers of America, and its locals, then followed their traditional position: that they would not work without a contract; and the members of Local Union 6290, and in fact all local unions, refused to work because of this labor dispute. This doctrine of "no contract—no work" was firmly established with the United Mine Workers of America, and this is found as a fact by the referee and the board.

The claimant's unemployment, beginning April 1, 1946, was therefore, in the words of clause (d) of §402 of the Unemployment Compensation Law as amended by the Act of May 29, 1945, P. L. 1145, §9 (43 PS §802), due to a "voluntary suspension of work resulting from an industrial dispute, at the factory establishment

. . . at which he . . . was last employed." [1] This is conceded by the Buckeye Coal Company, intervenor.

The Legislature possessed and exercised the sole power to determine the social and economic policies involved in unemployment compensation, and embedded these in the Unemployment Compensation Law (43 PS §751 et seq.). The circumstances under which compensation would be paid, the waiting period and other details were for it alone. Unless prohibited by the Constitution its pronouncements are valid and unconstitutionality is not here alleged. The Legislature could have denied benefits in the labor dispute cases (as the Legislature of 1947 did), or could have determined a lesser or greater waiting period.

Therefore, as conditions stood on April 1, 1946, it is conceded that this claimant was entitled to unemployment compensation after the waiting period. It is admitted that the industrial dispute continued, the industry on the one hand and the mine workers on the other being unable to resolve their differences. It is also granted that no contract existed between the industry and the mine workers. In fact, the industrial dispute was not terminated until a contract was made in June, 1946, when the men returned to work.

About May 10, 1946, there occurred what is referred to by the appellant as a "truce", and appellant asserts this renders claimant ineligible. A communication signed by the officers of the United Mine Workers of America was sent to each local union, which stated:

---

[1] As far as pertinent, §402, as amended reads: "An employe shall be ineligible for compensation for any week— . . . (d) In which his unemployment is due to a voluntary suspension of work resulting from an industrial dispute, at the factory establishment or other premises at which he is or was last employed: Provided, That this disqualification shall apply only to any week of unemployment which, in whole or in part, includes any part of a period beginning with the day on which such suspension occurs and ending with (i) the last day of the fourth calendar week immediately following the calendar week in which such suspension occurs, or (ii) the day on which such suspension was terminated, whichever is the earlier."

(a) negotiations incidental to the controversy have been discontinued and will be later resumed; (b) all mines now idle will immediately resume work for only *two weeks;* (c) the local union president and mine committee shall call upon the local management, advise it of the willingness of the workers to return to work for the two weeks' period, providing the company agrees to pay the regular wages plus retroactive increases later negotiated. It declared this to be a contribution of the United Mine Workers of America to the nation's economy, and recited: "Let every member be assured that the members of the National Policy Committee *are determined to accept no contract* that will not give to the mine workers the essential protection which is imperatively required"; and ended with the direction: "Let each member coöperate with this policy." (Emphasis supplied.)

This communication was not the result of any agreement between the United Mine Workers of America and the National Bituminous Coal Operators. The latter had no part in it and the declaration was wholly unilateral. In no sense was it a joint arrangement between the two parties to the labor dispute.

When this unilateral statement was received by Local Union 6290 it was placed before the members at their regular meeting, and upon a vote being taken they refused to return to work without a contract, i. e., until the labor dispute was settled.

The unemployment compensation authorities found as a fact that "to them [Local Union 6290] the existence of a written contract, apart from its provisions, had become by custom and usage a necessary condition of employment . . .", and, "the claimant and the other members of their Local Union refused to return to work at the Nemacolin Mine . . . and [it] remained strikebound"; and, "the claimant considered the existence of an Agreement [contract] between the United Mine Workers of America and the Operators to be a prerequisite to his resumption of work, irrespective of the fact

that work was waiting and regardless of the objectives and expressed desires of his constituted representatives and the course that the negotiations may have assumed, or, as he would say 'No Contract—No Work'. At a meeting of the Mine Committee of the Nemacolin Coal Mine at the regular meeting . . . the question of returning to work during the 'truce period' was raised and the men voted not to work without a contract." These findings were based on substantial evidence, and were without contradiction. They are binding on us: Act of 1936, 2nd Ex. Sess., P. L. (1937) 2897, §510, (43 PS §830).

The so-called two weeks' "truce" of May 10 was therefore not the settlement of a labor dispute, which, in fact, continued unresolved. Since the industrial dispute existing on April 1 was never *terminated* or settled, it follows that it was still in existence, and since the local union by vote decided to stand upon the dispute and not upon the "truce", they were unemployed because of a voluntary suspension of work resulting from an industrial dispute at the premises where claimant was employed.

The claimant was not ineligible for compensation as having failed to accept "suitable work." The so-called suitable work offered was *by the employer whose men, including the claimant, had suspended work because of an industrial dispute.* To call this "suitable work" is not only contrary to §402(d) above quoted, but is also in the teeth of the definition of "suitable work" in clause (t) of §1 of the Act, as amended, (43 PS §753), that notwithstanding any other provisions of that subsection, no work shall be deemed suitable "in which (1) the position offered is vacant, due directly to a strike, lockout, *or other labor dispute,* . . ." (Emphasis supplied.) This definition is retained verbatim from clause (r) of §4 of the original Act of December 5, 1936, 2d Ex. Sess. P. L. (1937) 2897.

Decision affirmed.