Harris Unemployment Compensation Case.
International Furniture Company, Appellant, *v.*
Unemployment Compensation Board of Review.

236

Argued November 14, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*O. W. Vanderlin*, with him *Joseph M. McNerney*, and *McNerney, Page & Vanderlin*, for appellants.

*Sydney Reuben*, Assistant Attorney General, with him *Thomas D. McBride*, Attorney General, for appellee.

OPINION BY WRIGHT, J., January 21, 1958:

The claims of Walter R. Harris and seven others in similar position were disapproved by the Bureau of Employment Security upon a finding that claimants had voluntarily terminated their employment, and were therefore ineligible for benefits under Section 402(b) of the Unemployment Compensation Law. Act of 1936, P. L. [1937] 2897, 402(b), 43 P.S. 802(b). The Referee reversed the decision of the Bureau and allowed benefits. The Board of Review adopted the Referee's findings and conclusions, and affirmed his decision. This appeal by the employer followed.

There is no material dispute concerning the factual situation. International Furniture Company is en-

gaged in the manufacture of furniture. One of its plants, employing approximately four hundred production workers, is located in Montoursville, Pennsylvania. The Upholsters' International Union of North America, AFL-CIO, was attempting to organize the plant. The Union had obtained signatures on a number of authorization cards and requested the Company for recognition as the certified bargaining agent for the employes without petitioning the National Labor Relations Board to hold a vote.[1] The Company refused to comply with this request but indicated its willingness to abide by the result of an election. On November 12, 1955, the claimant, along with twelve other employes, established a picket line which was maintained until January 11, 1956. Prior to the establishment of the picket line, the employes were informed that any of them who went out on a recognition strike would be subject to replacement. All but eight of the striking employes reported back to work within a few days. Production continued normally and there was no shutdown of the plant. On January 11, 1956, the eight striking employes decided to discontinue picketing, and requested that they be put back to work. They were advised that they had been replaced and that no work was available for them. Thereafter the Union filed an unfair labor practice charge with the National Labor

---

[1] The organizer testified as follows: "Q. They signed these cards to gain recognition of the company. Is that right? A. To gain authorization for the union to petition for an election. Q. In other words, they signed these cards to try and gain a majority or a sufficient number of the employees so they could try and have the company recognize the union? A. That's right, yes, sir. Q. Then again, sir, isn't it also necessary to petition the National Labor Relations Board to take a vote in a company among the employees of whether or not they want to join the union? A. Yes, I believe so. Q. Did they do that? A. No."

Relations Board, which refused to issue a complaint. On appeal, the action of the National Labor Relations Board was sustained by the General Council.

As previously indicated, the Bureau found that there was a voluntary termination of employment under Section 402(b). The reasoning of the Referee, affirmed by the Board, was that there was a stoppage of work because of a labor dispute, hence the ineligibility provision of Section 402(b) was not applicable.[2] He therefore concluded that claimants' unemployment after January 11, 1956, was involuntary. To sustain this conclusion, and this is in effect conceded by appellees' able counsel, we must interpret the term "stoppage of work", as used in the statute, to mean the cessation of work by an individual employe. While the statute does not define the term "stoppage of work", nor has it been expressly defined in any Pennsylvania case which has been cited or which our research has disclosed, we are clearly of the opinion that the term refers to cessation of work in the plant or place of employment, and not to cessation of work by the employe. This is the plain import of our prior decisions, and is the interpretation of the term under similar statutes in other jurisdictions. See *Gerber v. Board of Review*, 36 N. J. Super. 322, 115 A. 2d 575, and cases cited therein.

The Referee relied upon *Curcio Unemployment Compensation Case*, 165 Pa. Superior Ct. 385, 68 A. 2d 393, wherein rival unions were attempting to organize the plant. Each petitioned the employer for recog-

---

[2] "An employe shall be ineligible for compensation for any week . . . (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . And provided further, That the provisions of this subsection shall not apply in the event of a stoppage of work which exists because of a labor dispute within the meaning of subsection (d)".

nition without an election. The employer stood ready to recognize any union properly certified. In the words of Judge HIRT: "In assuming this stand, and refusing recognition otherwise, the company acted within its rights". One of the unions forced a stoppage of work at the plant, when its members went out on strike. All other production workers, including claimant, were thereafter excluded from the plant by a picket line. It was held that claimant had not voluntarily terminated his employment, but that benefits during the period of the strike should nevertheless be denied under Section 402(d). The case at bar presents an entirely different situation. Appellees did voluntarily terminate their employment. They could have returned to their jobs, as did the five other employes who were originally on the picket line. Work was available for claimants until it eventually became necessary for the employer to replace them. Normal production continued and there was no "stoppage of work" as we have interpreted that term. The *Curcio* case is clearly not authority for the award of benefits in the instant situation.

The declaration of public policy contained in Section 3 of the Act (43 P.S. 752) expressly provides that the unemployment reserves therein established are to be used "for the benefit of persons unemployed through no fault of their own". This declaration must be considered in construing every provision of the statute and in determining eligibility for benefits in every case: *Michalsky Unemployment Compensation Case*, 163 Pa. Superior Ct. 436, 62 A. 2d 113. To uphold the decision of the Board in the case at bar would be to penalize employers every time a small segment of employes strikes to gain recognition. If the employer does not replace those employes who refuse to work, "confusion" results and the plant operates under a handicap. On the other hand, if the employer replaces the striking

employes in order to properly continue operations, the effect of the Board's decision is to create a dilemma when the striking employes attempt to return. If they are reinstated, the new employes must be discharged. In either event, under the Board's decision, one group or the other would be entitled to benefits. Certainly the legislature did not contemplate such a result.

To summarize, while we do not question the fact that a labor dispute existed in the case at bar, nor does appellant contend otherwise, claimants voluntarily terminated their employment to establish the picket line. Under Section 402(b) they cannot avoid the consequence of such action on their part unless the labor dispute resulted in a stoppage of work. The controlling fact in the instant case is that it did not do so, hence the original decision of the Bureau was correct and benefits must be denied.

Decision reversed.