INTER-ISLAND RESORTS, LTD. *v.* ELIZABETH K. AKAHANE, EUGENE K. AKAO, MARCELINA A. AKAO, OLIVER K. AKAO, ROGER W. AKAO, VINCENT A. CATUDIO, TEOFILA R. COSTALES, SARAH M. ESPLAGUIRA, JOSEPHINE K. FERGERSTROM, FRANK GOMES, HARRIET L. HOOKAHI, ADELAIDE C. JOHNSON, FRANK P. KAMAKA, JR., ABRAHAM KEANAAINA, HILDA K. KEANAAINA, HERMAN H. KUNEWA, RONALD T. KURIHARA, TIMOTIO LABOA, JOHN K. MAKUAKANE, LAWRENCE MAKUAKANE, LUCIANA K. MAKUAKANE, JOSEPH L. NAHALE, SOPHIA K. NAHALE, HARRY T. NAKAYAMA, KICHIRO NISHIHARA, ROSELINE N. OLPINDO, DOMINGO S. PANCHO, HERMAN K. PUNIHAOLE, LOWELL K. PUNIHAOLE, JR., RAFAEL RODRIGUES, DAVID K. WAAHILA, HANNAH K. WILSON AND COMMISSION OF LABOR AND INDUSTRIAL RELATIONS OF THE TERRITORY OF HAWAII.

No. 4148.

NOVEMBER 27, 1962.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, JJ., CIRCUIT JUDGE FAIRBANKS, IN PLACE OF LEWIS, J., DISQUALIFIED, AND CIRCUIT JUDGE HEWITT, IN PLACE OF MIZUHA, J., DISQUALIFIED.

OPINION OF THE COURT BY WIRTZ, J.

This is an appeal from the judgment of the Circuit Court of the Third Circuit, entered on July 22, 1959, reversing and setting aside the decision of the Referee for unemployment compensation appeals. The case involves claims for unemployment benefits under the Hawaii Employment Security Law, filed on February 6, 1953 (effective as of February 1, 1953), by thirty-two employees of Inter-Island Resorts, Ltd.

The facts were agreed upon and submitted to the circuit court under the pre-trial order. Briefly, the claimants were employed at the Kona Inn, located in Kailua, Kona, Hawaii, until they were called out on strike[1] on New Year's Eve, December 31, 1952, by the Hotel and Restaurant Employees and Bartender's Union, Local 5, A.F.L.

During the first two days of the strike the employer operated with the help of supervisors and hotel guests. Service was curtailed but not to the extent of requiring the closing down of the hotel operations. During the first week of the strike the employer hired replacements and by the end of the week operations and service were substantially back to normal. With the commencement of the strike a picket line was established at the Kona Inn and was continued at least through the month of March 1953.

On February 10, 1953, at a meeting held between the employer and the union, the union was informed that eleven positions were still vacant and were available to the claimants. The positions so offered to the claimants by the employer were not accepted.

The Commission of Labor and Industrial Relations of the Territory of Hawaii, through its administrator, made the original determination on May 8, 1953, which allowed the claims and charged the amounts of the benefits against the employer's reserve account. The employer appealed from this determination and the appeal was heard by a referee for the Bureau of Employment Security who affirmed the determination by his decision of July 21, 1953 and further decision of October 6, 1953. The employer then filed with the circuit judge at chambers, circuit court of the third circuit, a petition for judicial review of the referee's decision. The commission was joined as

---

[1]The strike involved was an organizational one, called in an attempt to organize the employees of the Kona Inn and was not the result of any dispute as to wages, working conditions or grievances.

a party respondent in the petition as provided by statute.

In the pre-trial order the circuit judge set forth the following issues of law as those to be determined:

"1. Were Claimants eligible for unemployment compensation under Section 4230 (c), Revised Laws of Hawaii 1945?

"2. Were Claimants disqualified for unemployment compensation under Section 4231 (a), Revised Laws of Hawaii 1945?

"3. Were Claimants disqualified for unemployment compensation under Section 4231 (c), Revised Laws of Hawaii 1945?

"4. Were Claimants disqualified for unemployment compensation under Section 4231 (d), Revised Laws of Hawaii 1945?

"5. Should the benefits paid to Claimants be charged to the account of the Employer under Section 4250 (b), Revised Laws of Hawaii 1945, as amended, and under the general intent and purpose of the Hawaii Employment Security Law?"

The circuit judge ruled against the employer on the first three issues and for the employer on the fourth issue. He did not rule on the fifth issue, presumably because that issue became moot in view of his ruling on the fourth issue. He filed a written decision in which he set forth his reasoning for these rulings and thereupon entered the judgment from which both the commission and the employer appealed.

Upon the docketing of the appeals, the commission filed its opening brief, but the employer failed to do so. However, in its answering brief, in addition to answering the commission's arguments set forth in the opening brief, the employer stated four other questions which corresponded to the first three and the fifth issues set forth in the pre-trial order. Presumably, the employer intended

its answering brief to serve a dual purpose, that is, as its opening brief on its appeal and as its answering brief on the commission's appeal.

The commission filed a motion to strike portions of the answering brief dealing with the four additional questions stated by the employer and to dismiss the employer's appeal. In *Inter-Island Resorts, Ltd.* v. *Akahane,* 44 Haw. 93, 352 P.2d 856, the motion to strike was denied, although the fifth question raised in the employer's answering brief was held to be premature and not before this court under this appeal. At the same time the employer's appeal was dismissed.

The appeal before us then is that of the commission and specifies as error that:

"1. The Circuit Court erred in concluding that '. . . . . the disqualification in subsection (d) (of Section 4231) is plain and that it applies when, because of a labor dispute at the premises of the employer, the employee of that employer does not work at his job, that he is disqualified from receipt of unemployment benefits.'

"2. The Circuit Court erred in its conclusion that the Claimants are disqualified for unemployment compensation under Section 4231(d), Revised Laws of Hawaii 1945."

The additional questions raised in the answering brief, other than the fifth relating to the charging of the employer's account for benefits allowed, are likewise to be considered under the appeal as they were ruled on by the circuit judge and his rulings thereon were in support of the judgment entered.

Preliminarily, (although there didn't seem to be complete agreement on the part of the employer at the time of argument) it should be noted that it appears to be con-

ceded that the unemployment in this case arose out of a "labor dispute."[2] There was agreement that the cause of the unemployment of the claimants was the dispute over employer representation by the union which led to the organizational strike. Any disagreement there might be centers on the question of whether or not such dispute constituted a "labor dispute" as that term is used in the Hawaii Employment Security Law.

The term "labor dispute" is nowhere defined in the Hawaii Employment Security Law. Most unemployment compensation acts of other jurisdictions likewise fail to define this term. For the most part courts, in unemployment compensation cases, have resorted to the definition given in the National Labor Relations Act and the Norris-La Guardia Act.[3] *Miners in General Group* v. *Hix,* 123 W. Va. 637, 17 S.E.2d 810; *Dallas Fuel Co.* v. *Horne,* 230 Iowa 1148, 300 N.W. 303. In fact some courts have gone so far as to hold the federal statutory definitions binding. *Barnes* v. *Hall,* 285 Ky. 160, 146 S.W.2d 929; *Sandoval* v. *Industrial Comm'n,* 110 Colo. 108, 130 P.2d 930.

---

[2]The transcript of the pre-trial hearing before the circuit judge discloses the following:

"THE COURT: Let the record show that this is a pre-trial conference on Special Proceeding 245. Mr. Sodetani, Deputy Attorney General, for the Commission of Labor and Industrial Relations. James Case for Inter-Island Resorts, Ltd.

\*     \*     \*     \*     \*     \*     \*     \*

"The following facts will be stipulated to by and between counsel:

"MR. CASE: As a result of a *labor dispute,* 36 employees of Kona Inn walked off their jobs and went on strike on December 31, 1952." (Emphasis added.)

[3]The definition in the National Labor Relations Act, Title 29, § 152 (9), U.S.C.A., reads:

"The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee."

The definition contained in the National Labor Relations Act has been substantially incorporated in Chapter 92, Revised Laws of Hawaii 1955, dealing with Labor Disputes, Stevedoring Industry.[4] With this legislative expression of approval in mind, we have no hesitation in accepting this definition of "labor dispute" as governing the situation before us which embraces the concept of a dispute over employee representation by a union resulting in an organizational strike. *Cf.*, *Nobes* v. *Michigan Unemployment Comp. Comm'n*, 313 Mich. 472, 21 N.W.2d 820; *Gerber* v. *Board of Review*, 36 N.J. Super. 322, 115 A.2d 575; *Rainfair, Inc.* v. *Cobb*, 229 Ark. 37, 312 S.W.2d 906.

The commission contends that the phrase "stoppage of work" as used in Section 4231(d), Revised Laws of Hawaii 1945,[5] refers to the curtailment of employer's business operations and not to the cessation of the individual employee's labor. On the other hand the employer argues, as the circuit judge held, that this term as used in the Hawaii Employment Security Law should be construed to mean cessation of work by individual employees rather than curtailment of employer's business operations.

The term "stoppage of work" has been used in the

---

[4]"§ 92-2. *Definitions*. As used in this chapter unless the context clearly indicates otherwise:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"(f) 'Industrial dispute' and 'labor dispute' mean any controversy concerning wages, hours or other terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange wages, hours or other terms or conditions of employment."

[5]"Sec. 4231. An individual shall be disqualified for benefits:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"(d) *Labor Dispute*. For any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed; &ast; &ast; &ast;."

This section is now R.L.H. 1955, § 93-29(d).

labor dispute disqualification provisions of many of the state unemployment insurance laws.[6]

"Like most other aspects of the Draft Bill, the stoppage of work requirement had its origin in the British Unemployment Insurance Acts. When this country's fifty-one statutes were adopted, the phrase had long since acquired a settled construction from the British Umpires as referring 'not to the cessation of the workman's labour, but to a stoppage of the work carried on in the factory, workshop or other premises at which the workman is employed.' It is scarcely surprising that the overwhelming majority of appellate decisions in the United States have adopted the same interpretation." Shadur, *Unemployment Benefits and the "Labor Dispute" Disqualification,* 17 University of Chicago Law Review, 294, 308.

The leading case construing the term "stoppage of work" is *Lawrence Baking Co.* v. *Michigan Unemployment Comp. Comm'n,* 308 Mich. 198, 13 N.W.2d 260. In that case sixteen union members of the employer's ninety-eight employees stopped work and went on strike. The strike interrupted the employer's baking operations for a period of about fifteen minutes. The employer immediately hired new employees and continued normal full operation. The union established a picket line at the employer's plant and continued such picketing for about two and one-half months after the walkout. While the strike was in progress eleven of the sixteen striking employees filed claims for unemployment benefits. The court held that because there was no stoppage of work the labor dispute disqualification was not applicable, saying at page 263:

---

[6]In a few jurisdictions the stoppage of work phrase is omitted from the statutory language requiring only that the unemployment be due to the existence of a labor dipute. In such jurisdictions an employee is automatically disqualified regardless of a stoppage of work, so long as the unemployment exists because of a labor dispute.

"We are convinced that by the 1941 amendment of section 29(c)[7] the legislature intended to disqualify an employee for benefits, only when his unemployment resulted from a stoppage or substantial curtailment of the work and operations of the employer establishment because of a labor dispute. The phrase 'stoppage of work' refers to the work and operations of the employer establishment and not to the work of the individual employee."

To interpret "stoppage of work" as cessation of work by the individual employee would make this phrase synonymous with unemployment, thus rendering it meaningless as the language of Section 4231(d) expressly presupposes the existence of unemployment. See, Williams, *The Labor Dispute Disqualification*, 8 Vanderbilt Law Review 338; *Sakrison* v. *Pierce*, 66 Ariz. 162, 185 P.2d 528.

Unquestionably, a problem as to amount or degree of curtailment, as pointed out by the circuit judge in justification of his ruling to the contrary, is presented by the criterion of stoppage at the place of employment. But where disqualification is dependent on a "stoppage of work," there has been unanimous acceptance of the proposition that the "stoppage of work" means a *substantial curtailment* of the business activities at the employer's establishment rather than unemployment on the part of the striking employee. *Gerber* v. *Board of Review, supra*, 36 N.J. Super. 322, 115 A.2d 575; *Monsanto Chemical Co.* v. *Thornbrough*, 229 Ark. 362, 314 S.W.2d 493; *Sakrison* v. *Pierce, supra; Robert S. Abbott Publishing Co.* v. *Annunzio*, 414 Ill. 599, 112 N.E.2d 101; *Mountain*

---

[7]Section 29(c) of the Michigan statute reads in part:
"An individual shall be disqualified for benefits:
\*    \*    \*    \*    \*    \*    \*    \*
"(c) For any week with respect to which his total or partial unemployment is due to a stoppage of work existing because of a labor dispute in the establishment in which he is or was last employed."

*States Tel. & Tel. Co.* v. *Sakrison,* 71 Ariz. 219, 225 P.2d 707; *M.A. Ferst, Ltd.* v. *Huiet,* 78 Ga. App. 855, 52 S.E.2d 336; *Blakely* v. *Review Board,* 120 Ind. App. 257, 90 N.E.2d 353; *Deshler Broom Factory* v. *Kinney,* 140 Neb. 889, 2 N.W.2d 332; *Midvale Co.* v. *Unemployment Comp. Board of Review,* 165 Pa. Super. 359, 67 A.2d 380; *In re Steelman,* 219 N.C. 306, 13 S.E.2d 544; *Intertown Corp.* v. *Appeal Board of Mich. Unemployment Comp. Comm'n,* 328 Mich. 363, 43 N.W.2d 888. Of course, courts and administrative agencies may differ as to what constitutes *substantial curtailment,* but as Milton Shadur aptly stated, "as long as the bases for decision are correct * * * an occasional aberration is small cause for alarm." Shadur, *Unemployment Benefits and the "Labor Dispute" Disqualification, supra,* 17 University of Chicago Law Review, 294, 311.

In *Walgreen Co.* v. *Murphy,* 386 Ill. 32, 53 N.E.2d 390 and *Miners in General Group* v. *Hix, supra,* 123 W. Va. 637, 17 S.E.2d 810, relied on by the employer, the precise question of whether the term "stoppage of work" refers to cessation of the individual employee's labor or to the employer's business operation, was not before the respective courts. The *Miners in General Group* case was concerned solely with the definition of "labor dispute" and not "stoppage of work." In the *Walgreen* case the issue was whether a warehouse of an employer whose employees had gone out on strike was an establishment or other premises as those terms were used in the labor dispute disqualification provision of the Illinois Unemployment Compensation Act. From the language used it would appear that the court assumed that "stoppage of work" referred to curtailment or cessation of the employer's business operation. In fact, it was so decided later by the Illinois Supreme Court in *Robert S. Abbott Publishing Co.* v. *Annunzio, supra,* 414 Ill. 599, 112 N.E.2d 101.

*Board of Review* v. *Mid-Continent Petroleum Corp.,* 193 Okla. 36, 141 P.2d 69, also relied on by the employer in support of its argument, expresses the minority view and has been severely criticized and discredited. See, *M. A. Ferst, Ltd.* v. *Huiet, supra,* 78 Ga. App. 855, 52 S.E.2d 336; *Robert S. Abbott Publishing Co.* v. *Annunzio, supra; Sakrison* v. *Pierce, supra,* 66 Ariz. 162, 185 P.2d 528.

The case of *Sakrison* v. *Pierce, supra,* is strikingly similar to the instant situation. In that case certain hotel employees went out on strike which forced the hotel to drastically curtail its service to its patrons for about thirteen days. After this period the hotel fully resumed operations by successfully replacing the strikers with other employees. The court there held that the strikers were not excluded from unemployment benefits for the period after resumption of normal operations by a provision of the Unemployment Act disqualifying an individual for benefits due to a "stoppage of work" because of a strike at the place of employment.

We conclude that the actual "stoppage of work" constituting substantial curtailment, at the employer's establishment is the controlling factor under our statute in determining the qualification for benefits. The determination as to when normal operations have been resumed is for the commission to make and it is not dependent upon, nor does it necessarily have any relation to, when a labor dispute ended. *Ablondi* v. *Board of Review,* 8 N.J. Super. 71, 73 A.2d 262; *American Steel Foundries* v. *Gordon,* 404 Ill. 174, 88 N.E.2d 465; *Sakrison* v. *Pierce, supra.* Once it is determined that the employee's unemployment arises out of a "labor dispute," the disposing test for the claim for benefits is whether the unemployment is due to a "stoppage of work." If no "stoppage of work" exists, benefits cannot be denied under the labor

dispute disqualification of Section 4231. When claimants in the instant case went on strike on December 31, 1952, a temporary "stoppage of work" resulted. Resumption of substantially normal operations occurred within a week after the strike began and before their claims were presented. Inasmuch as the "stoppage of work" had ceased at the time the claims for unemployment benefits were filed, the labor dispute disqualification of Section 4231 does not prevent the claimants from receiving unemployment compensation.

It is argued that the interpretation of "stoppage of work" as referring to the place of employment would require an employer to subsidize the employees, or former employees, who are out on strike. The countervailing argument is that under this criterion, when the strikers first qualify for benefits the employer has already resumed normal operations by the hiring of permanent replacements and the strike, as an economic weapon, has lost its potency. These are arguments involving policy and properly should be addressed to the legislature rather than the courts.

In disposing of arguments based on policy matters the Supreme Court of Arizona aptly and properly said in *Sakrison* v. *Pierce, supra,* 66 Ariz. 162, 185 P.2d 528, 530:

"Much is made in counsels' briefs on policy considerations. For example, on the one hand lies the charge that to allow compensation in such a case as this would be, in effect, to force employers and the state to finance a strike. On the other hand, it is claimed that to deny it would be to deny aid to those whom, among others, the Act was designed to protect (i.e., those who had participated in a labor dispute and lost — at least to the extent that others now had their jobs and their former employer's operations had

been fully resumed). And that finally, a denial of compensation would seriously cripple their unquestioned right to strike. At the outset it should be made clear that this court is not concerned with any questions relative to the merits of the labor controversy itself. Our decision is not and cannot be determined by such factors. Instead it is determined by the choice that the elected legislative representatives of the people of this state have made for us. And whether or not the Act should compensate employees in this position is properly a choice for the legislature. * * * The function of this court, then, is simply to point out which route our legislature has chosen to travel."

The legislature has selected and clearly indicated the path Hawaii shall take in unmistakable language which cannot be ignored.

The employer, nonetheless, asserts that the court below also erred in ruling adversely to it on the first three questions presented under the pre-trial order, which contentions are presented in the employer's answering brief.

We will consider the first question thus presented concerning the availability for work of the claimants within the meaning of Section 4230(c), Revised Laws of Hawaii 1945.[8] This section requires, as one of the conditions of eligibility, that a claimant must be available for work in each and every week for which he claims unemployment benefits.

---

[8] R.L.H. 1955, § 93-28 (formerly R.L.H. 1945, § 4230(c)):

"*Eligibility for benefits.* An unemployed individual shall be eligible to receive benefits with respect to any week only if the board finds that:

\* \* \* \* \* \* \* \*

"(C) Availability. He is able to work and is available for work; \* \* \*."

Availability for work is an eligibility requirement, not a disqualification issue, and is a means to test an unemployed claimant's attachment to the labor market generally. The phrase has been generally interpreted by the courts to mean a willingness and readiness on the part of a claimant to accept suitable work "which he does not have good cause to refuse." *Roukey* v. *Riley,* 96 N.H. 351, 77 A.2d 30, 31.

The commission found that the claimants had met all of the eligibility requirements; in other words, that the claimants had not placed any restrictions on their availability for suitable work which they had no cause to refuse.

The employer contends that "so long as the picketing of Kona Inn continued (at least through March 27, 1953), the strikers had taken themselves out of the labor market. They were not available for work and so were not eligible for payments."

The record shows that the parties hereto stipulated, with the approval of the circuit judge, in the pre-trial order, that the only facts regarding the picketing were that "with commencement of the strike, a picket line was established at the Kona Inn and continued at least through the month of March, 1953." The record is bare of facts indicating the time spent, if any, by any of the claimants, on picket duty, nor does it show that any of the claimants were actually engaged in such picketing. Factually then, there is insufficient evidence to justify a finding that the claimants placed a restriction on their willingness and readiness to work by assuming picket duty.

However, accepting the probability that the claimants did participate in the picketing, this fact alone does not make them unavailable for work opportunities. As long

as the activities of an unemployed claimant do not substantially affect his willingness and readiness to accept suitable work, he must be deemed to have met the availability requirement.

The employer relies on *Tucker* v. *American Smelting & Refining Co.*, 189 Md. 250, 55 A.2d 692, in contending that "an employee who voluntarily and actively participates in picket duty makes himself unavailable for work." However, that case is distinguishable as pointed out in *Kentucky Unemployment Ins. Comm'n* v. *Louisville Bldrs. Sup. Co.*, 351 S.W.2d 157 (Ky. 1961). In the latter case employees walking a picket line during the labor dispute with the employer were held not to be unavailable for work so as to be disqualified from unemployment compensation benefits. The court said at page 162:

> "A final contention of the appellees is that the employes who walked the picket lines were not 'available for work' within the requirements of the unemployment compensation law. In support of the contention the appellees cite Tucker v. American Smelting & Refining Co., 189 Md. 250, 55 A.2d 692. It is true that in the Maryland case the court did use some language to the effect that the employes on the picket lines were not available for work, but the actual basis given for denying compensation benefits was that the employes were actively participating in a labor dispute, which constituted a bar to benefits under the statute.

> "There is nothing in the record in the instant cases to show that the employes on the picket lines had not registered for work and were not making reasonable efforts to obtain suitable work, in accordance with KRS 341.350. In this respect it is significant that KRS 341.100(2) (d) states that work shall not be

deemed 'suitable' if the acceptance of such work would be prejudicial to the continuance of an established employer-employe relationship to which the worker is a party. The statutes clearly do not contemplate that a worker who is temporarily out of employment by reason of a labor dispute must seek some other permanent employment."

Although Hawaii has no statutory counterpart to KRS 341.100(2) (d), referred to in the above quotation, still the act by a striker in seeking other permanent employment would terminate the existing employer-employee relationship and nullify the very purpose for which he went out on strike.

Finally, a refusal by any of the claimants to return to the proffered jobs does not affect their availability. In *Sakrison* v. *Pierce, supra,* 66 Ariz. 162, 185 P.2d 528, 534, the court, in disposing of the argument that claimants unemployed because of a work stoppage due to a labor dispute are unavailable for work because of their refusal to return to their jobs, had this to say:

"Nothing further is done by appellants to develop this thesis, but as no claim is made that appellees failed to fulfill all the statutory requirements other than those here discussed, what appellants must mean is that shortly after the hotel was struck, and before the strikers had been replaced, their jobs were open to them (on the hotel's terms, of course) and the fact that they refused showed them to be not 'available for work.' This argument not only falls by its own weight, but would render utterly senseless sec. 56-1005(d), which purports to show under what conditions a striker will and will not be eligible for compensation, and sec. 56-1005(c) (1) which, among other things, specifically exempts applicants from

having to accept positions 'vacant due directly to a strike, lock-out or other labor dispute.' "[9]

The employer next contends that each claimant in going out on a strike on December 31, 1952, voluntarily left his work without good cause attributable to his employing unit and is therefore disqualified for unemployment benefits under the provisions of Section 4231(a), Revised Laws of Hawaii 1945.[10]

This argument is in direct conflict with the generally accepted interpretation of the voluntary leaving and the labor dispute[11] disqualification provisions of the various state laws. The consensus supports the conclusion that the two disqualification provisions are mutually exclusive and that an individual whose unemployment is due to a "stoppage of work" which exists because of a "labor dispute" cannot be said to have "left his work voluntarily" within the meaning of the voluntary separation provision. *T. R. Miller Mill Co.* v. *Johns,* 261 Ala. 615, 75 So. 2d 675; *Intertown Corp.* v. *Appeal Board of Mich. Unemployment Comp. Comm'n, supra,* 328 Mich. 363, 43 N.W.2d 888; *Little Rock Furniture Mfg. Co.* v. *Commissioner of Labor,* 227 Ark. 288, 298 S.W.2d 56; *Marathon Electric Mfg. Corp.* v. *Industrial Comm'n,* 269 Wis. 394, 69 N.W.2d 573; Lesser, *Labor Dispute and Unemployment Compensation,* 55 Yale Law Journal 167.

It is one of the fundamental tenets of the unemploy-

---

[9] To the same effect are the provisions of Section 93-29(d) and (c)(2)(i), R.L.H. 1955, formerly Section 4231(d) and (c)(2)(A), R.L.H. 1945.

[10] "Sec. 4231. An individual shall be disqualified for benefits:

"(a) *Voluntary separation.* For any week in which he has left his work voluntarily without good cause attributable to his employing unit and for not less than two nor more than seven consecutive weeks of unemployment which immediately follow such week, as determined according to the circumstances in each case."

This section is now R.L.H. 1955, § 93-29(a).

[11] The labor dispute disqualification provision was considered and is set out in the early portion of this opinion.

ment compensation law that the administering agency remain neutral in the labor dispute and refrain from passing on the merits of the dispute. Courts almost unanimously hold that the merits of a labor dispute are immaterial in determining the existence of the dispute, the rationale being that the unemployment compensation fund should not be used for the purpose of financing a labor dispute any more than it should be withheld for the purpose of enabling an employer to break a strike. *Sakrison* v. *Pierce, supra,* 66 Ariz. 162, 185 P.2d 528; *In re Steelman, supra,* 219 N.C. 306, 13 S.E.2d 544; *Amory Worsted Mills, Inc.* v. *Riley,* 96 N.H. 162, 71 A.2d 788; *W. R. Grace & Co.* v. *California Employment Comm'n,* 24 Cal. 2d 720, 151 P.2d 215; *Byerly* v. *Unemployment Comp. Board of Review,* 171 Pa. Super. 303, 90 A.2d 322; *Lawrence Baking Co.* v. *Michigan Unemployment Comp. Comm'n, supra,* 308 Mich. 198, 13 N.W.2d 260; *T. R. Miller Mill Co.* v. *Johns, supra,* 261 Ala. 615, 75 So. 2d 675.

It should be clear from the reasoning of these cases that the application of the voluntary separation disqualification to a striker, under unemployment compensation statutes similar to ours, would violate the neutrality doctrine inasmuch as it would necessitate determining the justification of the strike in order to decide whether the claimant left his work "without good cause attributable to the employing unit." As pointed out by Mr. Leonard Lesser in his comprehensive article, *Labor Dispute and Unemployment Compensation, supra,* 55 Yale Law Journal 167, 178, "* * * the application of the voluntary-leaving disqualification might be that it would require the unemployment compensation agency and the courts to determine both the justice of the parties' cause and the reasonableness of the strike or lockout as a means of enforcing their demands."

Moreover, the terms "leaving work" or "left his work" as used in unemployment compensation laws refer only to a severance of the employment relation and do not include a temporary interruption in the performance of services. Kempfer, *Disqualifications for Voluntary Leaving and Misconduct*, 55 Yale Law Journal 147, 154. Absence from the job is not a leaving of work where the worker intends merely a temporary interruption in the employment and not a severance of the employment relation. Such is the case of strikers who have temporarily interrupted their employment because of a labor dispute. Under the prevailing view, they have not been deemed to have terminated the employment relationship and the voluntary leaving disqualification has no application to them. *T. R. Miller Mill Co.* v. *Johns, supra,* 261 Ala. 615, 75 So. 2d 675; *Mark Hopkins, Inc.* v. *California Employment Comm'n,* 24 Cal. 2d 774, 151 P.2d 229; *Knight-Morley Corp.* v. *Michigan Employment Security Comm'n,* 352 Mich. 331, 89 N.W.2d 541; *Marathon Electric Mfg. Corp.* v. *Industrial Comm'n, supra,* 269 Wis. 394, 69 N.W.2d 573.

In *Sandoval* v. *Industrial Comm'n, supra,* 110 Colo. 108, 130 P.2d 930, the court approvingly quotes from *Iron Molders' Union* v. *Allis-Chalmers Co.,* 166 Fed. 45, 52 (7th Cir.):

"A strike is cessation of work by employees in an effort to get for the employees more desirable terms. A lock out is a cessation of the furnishing of work to employees in an effort to get for the employer more desirable terms. Neither strike nor lock out completely terminates, when this is its purpose, the relationship between the parties. The employees who remain to take part in the strike or weather the lock out so that they may be ready to go to work again on terms to which they shall agree — the employer

remaining ready to take them back on terms to which he shall agree. Manifestly, then, pending a strike or a lock out, and as to those who have not finally and in good faith abandoned it, a relationship exists between employer and employee that is neither that of the general relation of employer and employee, nor again that of employer looking among strangers for employees, or employees seeking from strangers employment."

The cases of *Board of Review* v. *Mid-Continent Petroleum Corp., supra,* 193 Okla. 36, 141 P.2d 69, and *Walgreen Co.* v. *Murphy, supra,* 386 Ill. 32, 53 N.E.2d 390, relied on by the employer to support its contention that a workman who goes out on strike leaves his employment voluntarily, actually disqualified a striker under the labor dispute disqualification provision rather than the voluntary leaving disqualification.

The employer cites *American Brake Shoe Co.* v. *Annunzio,* 405 Ill. 44, 90 N.E.2d 83, and *Matson Terminals* v. *California Employment Comm'n,* 24 Cal. 2d 695, 151 P.2d 202, for the proposition that refusal to cross a picket line constituted a voluntary termination of employment so as to disqualify a claimant for unemployment benefits. These cases are clearly distinguishable from the instant situation as they involved claimants who were not involved in the labor dispute but who refused to cross picket lines established by other employees who were so engaged. Relying on these cases, the employer goes on to argue that "if the employee who is reluctant to cross a peaceful picket line is considered to be making a voluntary termination of his employment, then surely the picket himself must be clearly engaged in a voluntary act." There would seem to be no question that the act of a striker in picketing is voluntary but it does not follow that the mere voluntary act of picketing, of itself,

disqualifies a striker for having "voluntarily left his work without good cause attributable to the employing unit."

The remaining case relied upon by the employer is *International Furniture Co.* v. *Unemployment Comp. Board of Review*, 185 Pa. Super. 235, 138 A.2d 207. This is the only case that has come to our attention which is contrary to the general rule on the point. The court there held that strikers voluntarily terminate their employment and are disqualified under the voluntary leaving provision unless the strike results in a stoppage of work. On the other hand, the same court in *Midvale Co.* v. *Unemployment Comp. Board of Review, supra,* 165 Pa. Super. 359, 67 A.2d 380, had previously held that if a strike precipitates a stoppage of work the strikers are disqualified under the labor dispute disqualification provision. According to these decisions, in the same jurisdiction, the phrase "stoppage of work" used in a labor dispute disqualification provision, for all practical purposes, becomes meaningless as the court construed these disqualification provisions together so as to automatically disqualify all strikers from unemployment benefits.

Under the third question presented to the circuit court under the pre-trial order, the employer contends that since claimants refused to return to work when on February 10, 1953, it notified the union that certain positions were still vacant, they are disqualified under Section 4231(c),[12] Revised Laws of Hawaii 1945, for failure to apply for or to accept suitable work.

---

[12]This section, so far as here applicable, reads:

"Sec. 4231. An individual shall be disqualified for benefits:

\*　\*　\*　\*　\*　\*　\*　\*

"(c) *Failure to apply for work, etc.* If he has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the board or any duly authorized repre-

Employer's argument is that "so long as the striker's old job is open to him and is otherwise suitable, he should be ineligible for unemployment benefits." This, in effect, automatically disqualifies all strikers because they "refuse to accept suitable work." Here again we are faced with the generally accepted principle that the labor dispute disqualification provision and the refusal to accept suitable work provision are mutually exclusive. *Buckeye Coal Co.* v. *Unemployment Comp. Board of Review*, 161 Pa. Super. 594, 56 A.2d 393.

Where claimants are unemployed because of a labor dispute, and the employment relationship remains unsevered by any intervening cause, the existence of a "stoppage of work" perforce excludes the application of the refusal to accept suitable work disqualification. *Bilodeau* v. *Maine Employment Security Comm'n*, 153 Me. 254, 136 A.2d 522. On the other hand, if, after the strike commences, the employment relation is terminated either by the claimant's action of quitting or the employer's action of discharge, then the proviso in Section 4231(c) (2)(A) prohibits the denial of benefits for refusal to accept the work he quit or from which he was discharged.

The socalled suitable work offered here was by the employer whose men, including the claimants, had suspended work because of a labor dispute. This could

---

sentative of the board, or to accept suitable work when offered him. Such ineligibility shall continue for the week in which such failure occurred and for not less than two nor more than seven consecutive weeks of unemployment which immediately follow such week, as determined according to the circumstances of each case.

\*       \*       \*       \*       \*       \*       \*       \*

"(2) Notwithstanding any other provisions of this chapter, no work shall be deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

"(A) if the position offered is vacant due directly to a strike, lockout, or other labor dispute; \* \* \*."

This section has become R.L.H. 1955, § 93-29(a)(2)(i).

hardly be called suitable work, inasmuch as to return to it the strikers would have to abide by the employer's terms and conditions for re-employment without having settled their labor dispute as to union representation. To require a striker to return to work in a "struck" establishment, under pain of disqualification from unemployment compensation benefits, would effectively emasculate a "strike" as an effective economic weapon in the field of labor-management relations. It would do violence to the principle of neutrality required of the commission. Further, it certainly is contrary to the definition of "suitable work" as set forth in Section 4231(c)(2)(A) which provides that no work shall be deemed suitable "if the position offered is vacant due directly to a strike, lockout, or other labor dispute."

In the case of *In re Steelman, supra,* 219 N.C. 306, 13 S.E.2d 544, while the employer's mill was shut down by a strike, the employer notified all the employees by letter that operations would be resumed on a certain date and that strikers would be given their jobs back, which offer the strikers rejected. Although the issue was not before it, the court said at page 548:

"Perhaps it is fair to say, however, that the effect of the present determination is to declare the employer's letter of 29 April and his testimony that the claimants' positions were still open, if they cared to apply for them, would not perforce disqualify the claimants or render them ineligible for benefits from and after 13 May 1940, the date on which the stoppage of work ceased. The position finds support in Sec. 5(c)(2) of the Act which provides: 'Notwithstanding any other provisions of this Act, no work shall be deemed suitable and benefits shall not be denied under this Act to any otherwise eligible individual for refusing to accept new work under any of the following

conditions: (a) If the position offered is vacant due directly to a strike, lockout, or other labor dispute.' "

Once again, unless the labor dispute disqualification provision and the refusal to accept suitable work provision of the statute are mutually exclusive, the former is nullified in every instance of a strike. The determination of the existence of a "stoppage of work" becomes unnecessary if strikers, by their refusal to return to their jobs, are disqualified under Section 4231(c). But, as we have seen above, the labor dispute disqualification specifically requires the existence of a "stoppage of work" for denial of benefits to persons unemployed because of a labor dispute. The disqualification of strikers who refuse to return to their jobs on the same conditions and terms as they left them, in effect would result in the disqualification of claimants in all cases when unemployment is due to a labor dispute, without more. A holding to that effect would constitute judicial legislation.

Employer attempts to support its argument with the following statement from *Muncie Foundary Division* v. *Review Board,* 114 Ind. App. 475, 51 N.E.2d 891, 894:

"Under this section, if work is available at the factory, establishment, or other premise at which he last worked, and an employe fails to make himself available for the work by compliance with reasonable formalities, but avoids the work because of a labor dispute there existing in which he is participating, he is disqualified for benefits."

This reference is unfortunately misleading as the court in that case neither held nor said that strikers who refuse to return to their jobs are disqualified under the refusal to accept suitable work provisions of the statute. The court, in making this statement, had reference to the labor dispute disqualification and in effect said that if unemployment is originally caused by lack of work, but

thereafter work becomes available and the employee refuses to work because of a labor dispute, then he is disqualified under the labor dispute disqualification provision.

Having found the claimants to be eligible for unemployment benefits and that the circuit judge erred in disqualifying them from receiving such benefits under Section 4231(d), Revised Laws of Hawaii 1945 (now R.L.H. 1955, § 93-29(d)) and there being no other disqualification, the case is remanded for further proceedings not inconsistent with this opinion.

*Carlsmith, Carlsmith, Wichman and Case (H. William Burgess)* for Petitioner-Appellee-Appellant.

*Toshimi Sodetani,* Deputy Attorney General *(W. R. Watkins, Jr.,* Deputy Attorney General, with him on the briefs) for Respondents-Appellants-Appellees.